1  Robert C. Bowman, Jr. (SBN: 232388)
   Sean Gavin (SBN: 251124)
2  THE LAW OFFICE OF BOWMAN & ASSOCIATES
   A Professional Corporation
3  3841 North Freeway Blvd, Suite 185
   Sacramento, CA 95834
4  T: 916.923.2800
   F: 916.923.2828
5  E: sgavin@bowmanandassoc.com
6
7  Attorneys for Plaintiffs,
   SACRAMENTO E.D.M., INC. and DAN FOLK
8

   UNITED STATES DISTRICT COURT
9  EASTERN DISTRICT OF CALIFORNIA

10

11 SACRAMENTO E.D.M., INC., a                Case No.:   2:13-CV-00288-MCE-KJN
   California corporation; DAN FOLK, an
12 individual.                               PLAINTIFF'S MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN
13                                           SUPPORT OF OPPOSITION TO
            Plaintiffs,                      DEFENDANT'S MOTION TO
14                                           DISMISS OR TRANSFER VENUE
        v.
15                                           Date: April 4, 2013
   HYNES AVIATION INDUSTRIES,                Time: 2:00 p.m.
16 INC. dba HYNES AVIATION                   Courtroom: 7
   SERVICES, an Oklahoma corporation;        Before: The Honorable Morrison C.
17 HYNES CHILDREN TF LIMITED, a              England, Jr.
   business entity, form unknown;
18 MICHAEL K. HYNES, an individual;
   and DOES 1 through 50, inclusive,
19
20
            Defendants.
21

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2    I.   INTRODUCTION ................................................................... 1

3    II.  BACKGROUND ................................................................... 1

4    III. ARGUMENT ..................................................................... 5

5         A.  The Legal Standard ....................................................... 5

6         B.  No Factors Favor Transferring the Case to Missouri ........................ 6

7             1. An Agreement to Personal Jurisdiction is Not

8                a Venue Selection Clause ............................................. 7

9             2. All of the Events in Question Took Place in California ............... 8

10            3. California Courts Should Decide California Law ...................... 9

11            4. A California Court Can Apply Missouri Contract Law ............... 9

12        C.  Judicial Economy Does Not Favor

13            Transfer from California to Missouri ................................... 10

14        D.  Convenience Does Not Favor Transfer .................................. 10

15   IV.  CONCLUSION .................................................................. 12

16

17

18

19

20

21

22

23

24

25

26

27

28

---

TABLE OF AUTHORITIES

US Supreme Court Cases

Burlington Northern R.R. Co. v Ford, 504 US 648 (1992) ........................ 7

Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 US 165 (1939) .............................. 8

Van Dusen v. Barrack, 376 U.S. 612 (1964) ......................................... 5

Other Federal Cases

Carteret Savings Bank v. Shushan, 919 F.3d 225 (3rd Cir. 1991) .................................. 9

Commodity Futures Trading Comm. v. Savage, 611 F.2d 270 (9th Cir. 1979) .................. 6

Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834 (9th Cir. 1986) ................. 5

DIRECTV, Inc. v. EQ Stuff, Inc., 207 F. Supp. 2d 1077 (C.D. Cal. 2002) .................... 5

Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530 (N.D. Cal. 2005) ........................ 9

Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) ...... 5

Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,

179 F.R.D. 264 (C.D. Cal. 1998) ........................................................... 6

Jones v. GNC Franchising, Inc., 211 F.3d 495 (9th Cir. 2000) .................................. 6, 9

STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551 (N.D. Cal. 1988) ................................. 6

Threlkend v. Tucker, 496 F.2d 1101 (9th Cir., 1974) ............................................. 7

U.S. v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso,

362 F. Supp. 1175 (C.D. Cal. 2005) ........................................................ 5

Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..... 9

California State Cases

Aerojet-General Corp. v. Superior Court (Cheshire), 211 Cal.App.3d 216 (1989) ............. 10

Biewend v. Biewend, 17 Cal.2d 108 (1941)

People v. Catlin, 26 Cal.4th 81 (2001)

Reich v. Purcell, 68 Cal.2d 551 (1967)

1

<u>Statutes</u>

2    28 U.S.C. §1391(b)(2) ................................................................................. 8

3    28 U.S.C. § 1404(a) .................................................................................. 5

4    28 U.S.C. §1406(a) .................................................................................. 8, 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Defendants' Motion to Transfer Venue is faulty for two main reasons. First, the events that form the basis of the Complaint all took place in California, without exception. Second, Defendants misconstrue a choice of law provision as a forum selection clause. Indeed, the vast bulk of Defendants' argument is that Plaintiff signed contracts containing a "forum selection" clause. Quite simply, this is not true. In reality, Plaintiffs signed contracts agreeing to personal jurisdiction in Missouri, and to apply Missouri law to the contracts in question. Venue and jurisdiction and fundamentally different concepts under the law, and yet Defendants treat them as interchangeable. Furthermore, a governing law provision is not the same as a forum selection provision.

Therefore, because Defendants' foundational and sole substantive argument is inherently flawed, Plaintiffs respectfully request that this Court deny the instant motion.

## II. BACKGROUND

Plaintiff SACRAMENTO E.D.M., INC. ("SAC EDM") is a waterjet and Electrical Discharge Machining facility with more than 30 years of experience in the business of electrical discharge machining and waterjet technology. Plaintiff's President is an individual named Dan Folk.

Defendant DR. HYNES is a professional consultant, among other things, in the fields of Aviation Safety and Business and Finance.

Defendant DR. HYNES is also a paid professional mediator and arbitrator for the State of Oklahoma Supreme Court, the U.S. Department of Agriculture, and the U.S. Postal Service.

In 2000, Mr. Folk was a Plaintiff in an unrelated lawsuit that involved aviation safety. Consequently, Mr. Folk, through his counsel of record in that matter, hired DR. HYNES as an expert witness in that case in 2001.

Following the completion of that matter, DR. HYNES contacted Mr. Folk and suggested he could help Mr. Folk in the operation and development of SAC EDM.

Mr. Folk was intrigued by this solicitation, and therefore invited DR. HYNES to meet and discuss his plans.

1  As a result of this solicitation, in the spring of 2003, Defendant DR. HYNES, through

2  and on behalf of Defendant HYNES AVIATION INDUSTRIES, INC. ("HAI"), began

3  providing consulting services to SAC EDM.  Thereafter, in December, 2003, DR. HYNES lent

4  $10,000 to SAC EDM.

5  Thereafter, in January, 2004, HAI and SAC EDM entered into a business agreement

6  whereby HAI and DR. HYNES would act as a consultant for SAC EDM and would also provide

7  operating capital as necessary.  This created a business partnership between Plaintiffs and

8  DEFENDANTS.

9  The business agreement also provided that Mr. Folk would be entitled to 52.5% of SAC

10  EDM's net profits after tax, and that DR. HYNES would be entitled to 47.5% of SAC EDM'S

11  net profits after tax. Thereafter, Mr. Folk ceded all financial control of the company to DR.

12  HYNES.

13  In mid-2003, DEFENDANTS advised Mr. Folk that SAC EDM was paying too much on

14  the leases for its operating equipment.  Consequently, DEFENDANTS convinced Mr. Folk to

15  completely stop making payments on those leases.  The plan that DEFENDANTS proposed was

16  to continue using the equipment after ceasing the lease payments, and to contact the lender, US

17  Bancorp Equipment Finance, Inc., to renegotiate the terms of the lease.  DR. HYNES further

18  explained that if the lender refused to renegotiate the terms of the lease, it would get a judgment

19  against SAC EDM for the defaulted lease payments.  Subsequently, DR. HYNES explained, he

20  would purchase the judgment from US Bancorp Equipment Finance, Inc. for a reduced rate, and

21  would permit SAC EDM to repay this reduced debt instead of the amount of the original

22  judgment.

23  In reality, DEFENDANTS did not follow through on their plan.  Specifically, after they

24  convinced SAC EDM to cease making payments, DR. HYNES, through HYNES CHILDREN

25  TF LIMITED, purchased the judgment from US Bancorp Equipment Finance, Inc. for $50,000.

26  Instead of only charging SAC EDM this reduced amount, however, DR. HYNES and HYNES

27  CHILDREN TF LIMITED are now seeking to enforce the entirety of the judgment, with

28

1  interest, by means of, <u>inter alia</u>, harassing Orders for Examination and subpoenas for SAC

2  EDM's and Mr. Folk's personal tax records.

3      Neither HAI nor HYNES CHILDREN TF LIMITED has ever obtained from the

4  California Secretary of State a certificate of qualification to be permitted to transact intrastate

5  business, such as purchasing and pursuing a money judgment.

6      Furthermore, DEFENDANTS did more than merely provide consulting services to SAC

7  EDM.  Rather, DEFENDANTS took control of many of the expenses of the company.

8  Specifically, DEFENDANTS unilaterally determined that SAC EDM had insufficient capital to

9  service its debt and expenses.  Instead of working with Mr. Folk to reduce those obligations,

10 however, DEFENDANTS engaged in self-dealing whereby they made clandestine loans to SAC

11 EDM and then charged SAC EDM interest on those loaned amounts.  This was despite the fact

12 that DEFENDANTS had arranged SAC EDM'S expenses in such a way as to ensure that the

13 original obligations could not be serviced, let alone these new interest-bearing loan obligations.

14     One example of this self-dealing scheme came in the form of life insurance.

15 Specifically, DR. HYNES insisted that he and Mr. Folk take out life insurance policies and

16 name the other as beneficiary.  DR. HYNES explained that this would be useful because if he

17 died, SAC EDM would no longer have access to capital, and if Mr. Folk died, SAC EDM would

18 be unable to repay its loans to DEFENDANTS.  Based on these representations, Mr. Folk

19 agreed.

20     In approximately October, 2007, Mr. Folk obtained a term life insurance policy for

21 himself, naming DR. HYNES as the beneficiary, at a cost of approximately $63 per month.  DR.

22 HYNES also took out a policy, but his cost was approximately $1,560 per month.  Moreover,

23 Defendant HAI actually held the policies, and invoiced SAC EDM the approximately $1,600

24 monthly premiums.  This was despite knowing that SAC EDM could not afford this additional

25 expense.  As a result, HAI treated the unpaid $1,600 monthly invoices to SAC EDM as loans,

26 and charged 10% on them.

27     Additionally, DR. HYNES complained that he did not want Mr. Folk to be able to

28 cancel the policy, so he insisted that the he "own" it.  He suggested that he would not call the

1  loans due immediately if Mr. Folk agreed to this, and so Mr. Folk did.  Thereafter, DR. HYNES

2  converted Mr. Folk's policy from a "term life" policy to a "whole life" policy.  This maneuver

3  had two effects: it substantially raised the cost (to approximately $350 per month), and it

4  created ongoing value for the policy holder, who was now DR. HYNES.

5          Therefore, DEFENDANTS life insurance scheme yielded a result wherein SAC EDM

6  paid for a life insurance product that accrued value for DR. HYNES, and DR. HYNES, through

7  HAI, also made a 10% return on its "investment" of the premium amounts it charged back to

8  SAC EDM, all of which was secured by the value of the policy DR. HYNES had convinced Mr.

9  Folk to purchase in the first place.

10         Additionally, DEFENDANTS routinely arranged for the "sale" of SAC EDM's

11  equipment to themselves, for the purported purpose of reducing the loan debt SAC EDM owed

12  to DEFENDANTS.  Over time, DEFENDANTS slowly took ownership of most of SAC EDM's

13  equipment, and then leased it back to SAC EDM at rates that were extremely favorable to

14  DEFENDANTS.  When SAC EDM could not afford those payments – a circumstance that

15  DEFENDANTS not only knew of but in fact created – DEFENDANTS made additional loans,

16  on which they charged additional interest.  The result was that SAC EDM could never afford to

17  repay DEFENDANTS for the debts that DEFENDANTS created by their own unilateral actions.

18         Specifically, DEFENDANTS leased back the equipment it "bought" from SAC EDM

19  for the cost of the equipment plus 10%, plus an additional 10% for "taxes and insurance" (even

20  though SAC EDM already paid to insure the equipment and there were no taxes owed on the

21  equipment), plus an additional 10% for interest, plus 10% for "overhead and profit" (even

22  though there was no explanation of what this "overhead" could possibly be).

23         The result was that DEFENDANTS unilaterally consummated the sale of SAC EDM's

24  equipment on paper, then leased the equipment back to SAC EDM at such an exorbitant rate

25  that SAC EDM would never be able to pay the leases off.

26         Further, each time DEFENDANTS bought equipment from SAC EDM, it treated the

27  sale proceeds as profit for SAC EDM, of which DEFENDANTS were entitled to 47.5%.

28  Consequently, from 2004 through 2009, DEFENDANTS purchased no fewer than 17 individual

1   pieces of equipment, yielding a "profit" of more than $250,000 (which DEFENDANTS claim

2   entitled them to more than $118,750).

3       Plaintiffs relied on DEFENDANTS' aforementioned representations when entering into

4   the aforementioned transactions.

5       All of these aforementioned events – without exception – took place in California.

6   **III. ARGUMENT**

7       **A.  The Legal Standard**

8       This Court has discretion in deciding whether to grant a motion to transfer filed under 28

9   U.S.C. § 1404(a). Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.

10   1986). In the Ninth Circuit, a plaintiff's choice of forum is given substantial weight and a party

11   moving to transfer a case must present strong grounds for disturbing that choice. Id. (district

12   court did not abuse its discretion in denying defendant's request to transfer where defendant did

13   not make the necessary "strong showing of inconvenience to warrant upsetting the plaintiff's

14   choice of forum"); Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1092 (N.D.

15   Cal. 2002) (denying defendant's request to transfer since, "under Ninth Circuit law, a plaintiff's

16   choice of forum is accorded substantial weight in proceedings under this section, and courts

17   generally will not transfer an action  unless the 'convenience' and 'justice' factors strongly

18   favor venue elsewhere"); DIRECTV, Inc. v. EQ Stuff, Inc., 207 F. Supp. 2d 1077, 1082 (C.D.

19   Cal. 2002) (denying defendant's request to transfer, as"[t]here is a strong presumption in favor

20   of the plaintiff's choice of forum").

21       Transfer is not appropriate merely to shift the inconvenience from one party to another.

22   See Van Dusen v. Barrack, 376 U.S. 612, 646 (1964) (reversing and remanding grant of motion

23   to transfer, holding that "Section 1404(a) provides for transfer to a more convenient forum, not

24   to a forum likely to prove equally convenient or inconvenient"); U.S. v. One Oil Painting

25   Entitled "Femme en Blanc" by Pablo Picasso, 362 F. Supp. 1175, 1185-6 (C.D. Cal. 2005)

26   (denying defendant's motion to transfer because "transfer should not be granted if the effect is

27   simply to shift the inconvenience to the party resisting the transfer"). The burden is on the

28

---

1   moving party to establish that a transfer will allow a case to proceed more conveniently and

2   better serve the interests of justice.  See, e.g., <u>Commodity Futures Trading Comm. v. Savage</u>,

3   611 F.2d 270, 279 (9th Cir. 1979) (affirming denial of motion to transfer); <u>STX, Inc. v. Trik</u>

4   <u>Stik, Inc.</u>, 708 F. Supp.  1551, 1555-56 (N.D. Cal. 1988) (denying motion to transfer on the

5   grounds that "defendant can demonstrate no strong reason for transfer"). Defendants' attempt to

6   shift the inconvenience of travel to Plaintiffs is not a basis to transfer the case.

7           In deciding a motion to transfer venue, courts weigh multiple factors, including: (1) the

8   plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the

9   witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests

10  of justice; and (7) administrative considerations. Charles Alan Wright & Arthur R. Miller,

11  Federal Practice and Procedure, §§ 3841-55; see also <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d

12  495, 498-99 (9th Cir. 2000) (suggesting the following factors may be relevant in assessing a

13  motion to transfer venue: "(1) the location where the relevant agreements were negotiated and

14  executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of

15  forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the

16  plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the

17  two forums, (7) the availability of compulsory process to compel attendance of unwilling non-

18  party witnesses, and (8) the ease of access to sources of proof"); accord <u>Guthy-Renker Fitness,</u>

19  <u>L.L.C. v. Icon Health & Fitness, Inc.</u>,179 F.R.D. 264, 269 (C.D. Cal. 1998).  The only factor

20  that weighs in favor of disturbing Plaintiffs' choice of forum is the governing law provision, but

21  that is insufficient to justify transfer here, especially when the area of law – contract – is not

22  likely to be significantly different across different venues.

23                          **B.  No Factors Favor Transferring the Case to Missouri**

24          Defendants urge this Court to transfer the matter to Missouri because Plaintiffs agreed to

25  jurisdiction in Missouri, and to permit Missouri law to govern the agreements.  These reasons

26  are not compelling because jurisdiction and venue are different.

27

28

1.  An Agreement to Personal Jurisdiction is Not a Venue Selection Clause

Jurisdiction refers to the Court's power to adjudicate the matter in controversy (through subject matter jurisdiction) and the Court's power to bind particular persons to its judgment (through personal jurisdiction). Venue, on the other hand, is simply the selection of the place where those jurisdictional powers may be properly exercised.

Venue rules are not jurisdictional. Instead, they are independent requirements; a Court cannot proceed in the absence of either. See Threlkend v. Tucker, 496 F.2d 1101, 1103-1104 (9th Cir., 1974).

The federal venue statutes are permissive, providing that "a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." See 28 U.S.C. §1391(b)(2).

Moreover, there are different rationales for the jurisdiction and venue rules. Jurisdiction involves the power of the Court to render an effective judgment, and is premised on Constitutional considerations. Alternatively, venue is premised on administrative considerations established by statute that are designed to "reflect equity or expediency in resolving disparate interests of parties to a lawsuit in the place of trial." See Burlington Northern R.R. Co. v Ford, 504 US 648, 650-651 (1992).

Personal jurisdiction is a question of the Court's power to bind the defendant, based on whether or not the defendant has Constitutionally sufficient "minimum contacts" with the forum state. Here, Plaintiffs essentially agreed, by contract, that they have such sufficient minimum contacts that if they were sued in Missouri, the Courts there would have personal jurisdiction over them. They did not agree – and nothing in the plain language of the purported "forum selection clause" implies and dictates such agreement – that the only proper venue for a lawsuit would be Missouri.

1    Rather, proper venue is simply based on the most convenient or fair forum, as

2  established by various statutory criteria (such as where the cause of action arose).  See Neirbo

3  Co. v. Bethlehem Shipbuilding Corp., 308 US 165, 167-168 (1939).

4    In this case, Plaintiffs did not sign a forum selection clause.  The plain language of the

5  provision – notably titled "Governing Law" – provides:

6         "THIS LEASE IS GOVERNED BY THE LAW OF MISSOURI and YOU

7         CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN

8         MISSOURI AND EXPRESSLY WAIVE THE RIGHT TO A TRIAL BY

9         JURY." (Capitalization in original).

10    A forum selection clause would say something like, for example, "Any litigation to

11  enforce this agreement shall be instituted in any Court located within Missouri and nowhere

12  else," or "The parties agree that any dispute arising out of this agreement will be brought in the

13  Eastern District of California."  This example language is significantly different from the

14  relevant contract language before this Court.  Specifically, nothing in the contract language

15  indicates that Plaintiffs agreed to venue of Missouri, or that any such venue would be exclusive.

16  In fact, venue is clearly not contemplated at all; jurisdiction is.

17    For this reason, Defendants' entire argument is faulty, and this Court should decline to

18  transfer or dismiss this case.

19             2.   All of the Events in Question Took Place in California

20    As explained above, every single transaction for which Plaintiffs now seek relief

21  occurred in California.  See also Declaration of Dan Folk, filed concurrently herewith.  "A civil

22  action may be brought in a judicial district in which a substantial part of the events or omissions

23  giving rise to the claim occurred, or a substantial part of property that is the subject of the action

24  is situated."  See 28 U.S.C. §1391(b)(2).

25    In determining whether venue is proper under §1391(b)(2), if a "substantial part" of the

26  events or omissions occurred where Plaintiff chooses to file suit, Defendant has no right to

27  challenge venue under §1406(a).  Indeed, a Court ordinarily cannot grant a motion to transfer

28

1  under §1406 if venue is proper.  See, e.g., <u>Carteret Savings Bank v. Shushan</u>, 919 F.3d 225, 231

2  (3rd Cir. 1991).

3  Notably, Defendants have not argued that the underlying events took place anywhere but

4  in California.  Instead, they contend that Dr. Hynes did his portion of his work in Missouri.

5  This is clearly not a valid basis for transfer.  As such, they have essentially ceded that, absent a

6  forum selection clause, venue is proper in California.  Therefore, because the forum selection

7  clause argument is misplaced, this case should be heard here in California.

8              3.   California Courts Should Decide California Law

9  Because the legal basis for all of Plaintiffs' claims involves California law, California's

10  interest in deciding this matter is greater than Missouri's. Of the nine counts set forth in

11  Plaintiffs' Complaint, all are based on California law. Only a portion of Plaintiffs' claims

12  involve the underlying contracts that Defendants identify here.  Most of the other claims are not

13  contractual in nature.  In general, California courts are more familiar with California law than

14  are courts from other jurisdictions and such familiarity is a factor to be considered in deciding

15  whether to grant a motion to transfer. See <u>Jones v. GNC Franchising</u>, 211 F.3d at 498-99 (9th

16  Cir., 2000). In addition, the California forum itself has an interest in deciding California claims.

17  See <u>Ellis v. Costco Wholesale Corp.</u>, 372 F. Supp. 2d 530, 539 (N.D. Cal. 2005) (denying

18  defendant's motion to transfer where California has a "public interest in trying plaintiffs'

19  California claims within this state.").

20  This is particularly true with respect to plaintiffs' California Unfair Competition Law

21  claims. This law "serves important and vital public policies and interests" of the state. <u>Watson</u>

22  <u>Labs., Inc. v. Rhone-Poulenc Rorer, Inc.</u>, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001).

23  Once again, this factor counsels in favor of honoring Plaintiffs' choice of forum and not

24  transferring the matter.

25              4.   A California Court Can Apply Missouri Contract Law

26  Plaintiffs here do not challenge the sufficiency of the Governing Law provision in the

27  contract.  Indeed, for purposes of enforcing those contracts, Missouri law should apply.  But

28  California Courts can and have applied and analyzed Missouri law in a variety of contexts.

1    Indeed, it is not uncommon.  See, e.g., <u>Reich v. Purcell</u>, 68 Cal.2d 551 (1967); <u>Biewend v.</u>

2    <u>Biewend</u>, 17 Cal.2d 108 (1941); <u>People v. Catlin</u>, 26 Cal.4[th] 81 (2001); <u>Aerojet-General Corp.</u>

3    <u>v. Superior Court (Cheshire)</u>, 211 Cal.App.3d 216 (1989).

4         As such, Defendants' Governing Law provision should not be transformed into a forum

5    selection clause and thereby limit Plaintiffs' otherwise valid options for venue.

6    **C.  Judicial Economy Does Not Favor Transfer from California to Missouri**

7         Defendants argue that transfer would permit consolidation.  This is true.  What they do

8    not tell the Court is that they filed their suit in Missouri <u>after</u> Plaintiffs filed the underlying state

9    Court complaint.  Furthermore, Plaintiffs will file their own motion to transfer the Missouri case

10   to the Eastern District, where consolidation will also be appropriate[1].

11        Additionally, there is another California case that is already firmly entrenched in the

12   Sacramento Superior Court.  Plaintiff's complaint involves this case intimately, and there is no

13   basis for that matter to be transferred to Missouri.  As a result, at least some portion of

14   Plaintiffs' claims cannot be transferred.

15        Consequently, Defendants' argument regarding consolidation and judicial economy,

16   while sound, do not favor transfer from California to Missouri any more than they favor transfer

17   from Missouri to California.  Therefore, Plaintiffs believe that this factor should not be given

18   much weight at all, as the other venue factors bear far more importance.

19   **D.  Convenience Does Not Favor Transfer**

20        Defendants argue that Missouri is a more convenient forum because "the trials will

21   require dozens of witnesses and thousands of documents, almost all of which are located or

22   reside in Missouri." (Defendants' Mot. at 7:26 – 7:28). This does not support transfer.

23   Obviously, Plaintiffs will make all of their own witnesses available in California, its chosen

24   forum.  In addition, though the motion cites to Dr. Hynes's declaration, in reality Dr. Hynes

25   does not mention a single witness who would be inconvenienced by travel (other than himself).

26

27   _____

[1] Plaintiffs are working with local counsel on their Motion to Transfer Venue from the Western District of Missouri

28   to the Eastern District of California, and Plaintiffs' counsel in this matter believes that motion will be filed prior to
     the hearing on this present motion before this Court.

1    Even if it were true that there are other witnesses, Defendants have no basis for arguing

2  that the location of their witnesses favors transfer.  Indeed, Defendants' corporate residence is

3  not even in Missouri, but in Frederick, Oklahoma, more than 400 miles away (and a six hour

4  drive) from the Western District of Missouri, Southern Division courthouse[2].

5    Moreover, as Defendants know, the practical reality of contemporary litigation is that

6  witnesses and evidence can be made available in almost any jurisdiction.  Certainly the

7  "thousands of documents" will be exchanged between the parties well in advance of trial.

8  Additionally, documents are portable, and even if they were not, one of the parties here will

9  have to move them over some distance.  Defendants have made no showing that their witnesses

10 would be available for trial in Missouri, but not California.

11    The same is true for non-party witnesses. Defendants have not identified any non-party

12 witnesses who will suffer inconvenience by trying the case in California. Instead, they claim

13 that Dr. Hynes's age should favor transfer. (Hynes Decl. at 2:12 – 2:17). Defendants' argument

14 is not persuasive. Furthermore, Defendants do not attempt to account for variables such as

15 Missouri's winter weather, including snow storms, or the fact that Dr. Hynes signed these

16 agreements in California.  They also ignored that Plaintiff has a business to run in Sacramento,

17 and having a trial in Missouri will greatly hinder his ability to do that. Convenience simply does

18 not favor transfer to Missouri.

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 _____

28 [2] Indeed, driving from Frederick, Oklahoma to Oklahoma City and then flying to Sacramento would take approximately six-seven hours door to door, which is equivalent to the drive to Springfield, Missouri.

1

## IV. CONCLUSION

In filing its Complaint, Plaintiffs exercised their right to litigate in the forum of their choice. Given the substantial nexus of operative facts which took place in California, the forum's own interest in litigating the case, and the comparative convenience of all parties and witnesses, this was a sensible choice. Defendants' motion to transfer seeks only to shift the burden of travel to Plaintiffs, as the only things Defendants can prove exist in the Western District of Missouri is an adopted second corporate residence. Defendants' frequent argument that the Governing Law provision is a forum selection clause in hiding does not favor transfer any more than Defendants' failure to identify any witnesses in Missouri or anywhere else does. The burden here weighs heavily on Defendants, and they have failed to meet that burden. Accordingly, Plaintiffs respectfully request that this Court DENY Defendants' Motion to Transfer Venue in its entirety.

Respectfully Submitted,

THE LAW OFFICE OF BOWMAN & ASSOCIATES
A Professional Corporation

Date: 3/21/2013

By: _____
Sean Gavin (SBN: 251124)
Attorneys for Plaintiffs
SACRAMENTO E.D.M., INC. and DAN FOLK