1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   SACRAMENTO E.D.M., INC., a                    No.  2:13-cv-00288-MCE-KJN
     California Corporation; DAN FLOCK,
12   an individual,

13            Plaintiffs,

14        v.                                        **MEMORANDUM AND ORDER**

15   HYNES AVIATION INDUSTRIES,
     INC., at el.,
16
              Defendants.
17

18

19        This case arises out of a decade-long business relationship in which Defendant

20   Michael Hynes ("Hynes") provided business consulting services to Plaintiffs Sacramento

21   E.D.M., Inc. ("SAC EDM") and SAC EDM's President, Dan Folk ("Folk").

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

1   Plaintiffs filed the instant lawsuit in the Superior Court of California, County of

2   Sacramento, against Hynes and two corporate Defendants, Hynes Aviation Industries,

3   Inc. ("HAI") and Hynes Children TF Limited ("HCTF"), alleging the following causes of

4   action: (1) Breach of Fiduciary Duty; (2) Fraud; (3) Constructive Fraud; (4) Intentional

5   Interference with Prospective Business Advantage; (5) Negligent Interference with

6   Prospective Business Advantage; (6) Tortious Interference with Contract; (7) Unjust

7   Enrichment; (8) Unfair Business Practices in Violation of California Business and

8   Professions Code § 17200; and (9) Declaratory Relief.  (ECF No. 2-1.)  On February 14,

9   2013, Defendants removed the action to this Court on the basis of diversity jurisdiction.

10  (ECF No. 2.)  Presently before the Court is Defendants' Motion to Dismiss for Improper

11  Venue or, in the Alternative, to Transfer to the Unites States District Court for the

12  Western District of Missouri.  (ECF No. 6.)  Plaintiffs oppose Defendants' Motion.  (ECF

13  No. 10.)  For the reasons detailed below, the Court DENIES Defendants' motion.

14

15                                    **BACKGROUND**[1]

16

17        The facts relevant to Defendants' Motion are as follows.  SAC EDM is a California

18  corporation, with the principal place of business in the County of Sacramento, engaged

19  in the business of electrical discharge machining and waterjet technology.  Defendant

20  Hynes is a professional consultant, among other things, in the fields of aviation safety

21  and business and finance.  Hynes is also the President and Chairmen of Defendants

22  HAI and HCTF.  (Declaration of Michael Hynes in Support of Defendants' Motion to

23  Dismiss ("Hynes Decl."), ECF No. 7 ¶ 2.)

24        Since 2003, Hynes has been providing business and financial consulting services

25  to Folk and SAC EDM.

26  ///

27  ───────────────────────

28        [1] Unless otherwise noted, the following facts are derived, at times verbatim, from Plaintiffs'
Complaint, attached as Exhibit 2 to Defendants' Notice of Removal.  (ECF No. 2-1.)
        [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless

1    In January 2004, HAI and SAC EDM entered into a contract whereby Hynes would

2    provide consulting services to SAC EDM and also provide operating capital as

3    necessary.  According to the contract, Folk would be entitled to 52.2% of SAC EDM's net

4    profit after tax, and Hynes would be entitled to 47.5% of SAC EDM's net profits after tax.

5    That agreement allegedly created a "business partnership" between the parties and

6    provided Hynes with the full financial control over SAC EDM.  (Compl. ¶¶ 17-18.)

7           In furtherance of their business relationship, in August 2004 and October 2006,

8    the parties entered into two Master Lease Agreements ("Lease Agreements") pursuant

9    to which Defendant Hynes purchased office and manufacturing equipment which it then

10   leased to SAC EDM.  (ECF No. 6 at 6; Declaration of Paul W. Tozer in Support of

11   Defendants' Motion to Dismiss ("Tozer Decl."), ECF No. 8 at 11, 19.)  Both Lease

12   Agreements contained the following "Governing Law" provision:

13

14           THIS LEASE IS GOVERNED BY THE LAW OF MISSOURI
             AND YOU CONSENT TO THE JURISDICTION OF ANY
15           COURT LOCATED WITHIN MISSOURI AND EXRESSLY
             WAIVE THE RIGHT TO A TRIAL BY JURY.

16   (Id. at 15, 23.)

17          According to the Complaint, in mid-2003, Defendants advised Folk that SAC EDM

18   was paying too much on its leases for the operating equipment and convinced Folk to

19   stop making payments on those leases.  Defendants allegedly proposed a plan under

20   which SAC EDM would cease making its lease payments and would renegotiate the

21   lease terms with its lender U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp").  As

22   alleged, Hynes promised to Plaintiffs that, if the lender refuses to renegotiate the terms

23   of the lease and would get a judgment against SAC EDM, Defendants would purchase

24   the judgment from the lender for a reduced rate and would allow SAC EDM to repay this

25   reduced debt instead of the amount of the original judgment.

26          SAC EDM allegedly followed Hynes' advice and stopped making payments to

27   U.S. Bancorp, which led to a judgment being entered against SAC EDM for more than

28   $280,000.

1   As agreed upon between the parties, Defendants purchased the judgment from U.S.

2   Bancorp for a reduced amount of $50,000.  However, contrary to their prior promise,

3   Defendants allegedly demanded that SAC EDM pay the full amount of the judgment.

4         According to the Complaint, Defendants also took control of many of the

5   expenses of SAC EDM and unilaterally determined that the company had insufficient

6   capital to service its debts and expenses.  Plaintiffs allege that Defendants subsequently

7   engaged in self-dealing by making "clandestine loans" to SAC EDM and then charging it

8   interest of those loaned amounts.  (Compl. ¶ 22.)  Further, according to Plaintiffs,

9   Defendants "routinely" arranged for the "sale" of SAC EDM's equipment to themselves,

10  which led to Defendants taking ownership of most of SAC EDM's equipment.  (Id. ¶ 27.)

11  Then, Defendants leased the equipment back to SAC EDM at high rates.  When SAC

12  EDM could not pay those rates, Defendants allegedly made additional loans to SAC

13  EDM and charged it additional interest.  Thus, as alleged, Defendants created a situation

14  in which SAC EDM could never repay them for the debts that Defendants themselves

15  created by their own unilateral actions.  Further, each time Defendants bought

16  equipment from SAC EDM, they treated the sale proceeds as "profit" for SAC EDM,

17  which entitled them to 47.5% according to the parties' agreement.  (Id. ¶ 30.)  Overall,

18  Defendants purchased at least 17 individual pieces of equipment from SAC EDM,

19  yielding a "profit" for Defendants of over $118,750.  (Id.)

20        Hynes and SEDM are currently opposing parties in litigation pending in the United

21  States District Court for the Western District of Missouri, entitled Hynes Aviation

22  Industries, Inc. v. Sacramento E.D.M., Inc., and Daniel Folk, Case No. 6:12-CV-03521

23  ("Missouri Action"), filed December 10, 2012.  (ECF No. 6 at 7; Tazer Decl. ¶ 2.)

24  According to Defendants, Plaintiffs have been served with the summons and complaint

25  in the Missouri Action.  (ECF No. 6 at 7.)  Defendants assert that the instant case and

26  the Missouri Action raise the same or substantially similar issues of law and fact.  (Id. at

27  11.)

28  ///

4

| | |
|---|---|
| 1 | **ANALYSIS** |
| 2 | |
| 3 | Through their Motion, Defendants seek dismissal or transfer of this action for |
| 4 | improper venue pursuant to Federal Rule of Civil Procedure[2] 12(b)(3) and 28 U.S.C. |
| 5 | § 1406(a) based on the forum selection clauses in the Lease Agreements or, in the |
| 6 | alternative, a transfer to the U.S. District Court for the Western District of Missouri |
| 7 | pursuant to  28 U.S.C. § 1404(a).  (ECF No. 6 at 5.) |
| 8 | |
| 9 | **A.  Forum Selection Clauses** |
| 10 | |
| 11 | Parties may by contract designate a forum in which any litigation is to take place. |
| 12 | Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).  In this circuit, a motion to |
| 13 | dismiss based on the forum selection clause is construed as a Rule 12(b)(3) motion to |
| 14 | dismiss for improper venue.  Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009).  In |
| 15 | considering a Rule 12(b)(3) motion, "the pleadings need not be accepted as true and the |
| 16 | court may consider facts outside of the pleadings."  Murphy v. Schneider Nat'l, Inc., |
| 17 | 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted).  When faced with |
| 18 | contested facts bearing on the impact of a forum selection clause, "the trial court must |
| 19 | draw all reasonable inferences in favor of the non-moving party and resolve all factual |
| 20 | conflicts in favor of the non-moving party."  Id. at 1138.  If the court determines that a |
| 21 | forum selection clause is valid and enforceable, the court may dismiss a case or "if it be |
| 22 | in the interest of justice, transfer such case to any district or division in which it could |
| 23 | have been brought."  28 U.S.C. § 1406(a). |
| 24 | Courts often characterize forum-selection clauses as either "permissive" or |
| 25 | "mandatory."  For a clause to be mandatory, it "must contain language that clearly |
| 26 | designates a forum as the exclusive one." |
| 27 | |
| 28 | [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted. |

1   N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037

2   (9th Cir. 1995).  A permissive clause, on the other side, does not contain language

3   clearly requiring exclusive jurisdiction.  Hunt Wesson Foods, Inc. v. Supreme Oil Co.,

4   817 F.2d 75, 77 (9th Cir. 1987).  Permissive forum selection clauses do not mandate,

5   but merely allow, an action to be filed in the specified forum.  Id.

6        "When only jurisdiction is specified[,] the clause will generally not be enforced

7   without some further language indicating the parties' intent to make jurisdiction

8   exclusive."  Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989).  The

9   Ninth Circuit's decision in Hunt Wesson Foods is instructive.  In that case, the court of

10  appeals concluded that a contractual provision stating that "courts of California, County

11  of Orange, shall have jurisdiction" over the parties' contractual disputes was permissive,

12  rather than mandatory.  817 F.2d at 77-78.  The Ninth Circuit explained:

13

14          Here, the plain meaning of the language is that the Orange
            County courts shall have jurisdiction over this action.  The
15          language says nothing about the Orange County courts
            having exclusive jurisdiction.  The effect of the language is
16          merely that the parties consent to the jurisdiction of the
            Orange County courts. . . .  Thus, [defendant] cannot object
17          to litigation in the Orange County Superior Court on the
            ground that the court lacks personal jurisdiction.  Such
18          consent to jurisdiction, however, does not mean that the
            same subject matter cannot be litigated in any other court.  In
19          other words, the forum selection clause in this case is
            permissive rather than mandatory.

20  Id. at 77.

21        The forum selection clauses in the parties' Lease Agreements, like the clause in

22  Hunt Wesson Foods, merely provide that the parties "consent to the jurisdiction of any

23  court located within Missouri."  (ECF No. 8 at 15, 23.)  Thus, the clauses at issue are

24  permissive and do not bar Plaintiffs from filing this action in California.

25        Defendants, however, contend that the forum selection clauses are mandatory

26  because the parties intended to designate Missouri courts as exclusive venue for their

27  disputes, and that Defendant Hynes would not have agreed to enter into the Lease

28  Agreements had he known that the forum selection clauses were non-mandatory.

1  (ECF No. 12 at 1; Hynes Decl., ECF No. 7 ¶ 6.)  In interpreting a forum selection clause,

2  courts look to "general principles for interpreting contracts."[3]  Doe 1, 552 F.3d at 1081.

3  Contract terms should be "given their ordinary meaning, and when the terms of a

4  contract are clear, the intent of the parties must be ascertained from the contract itself."

5  Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999).

6  "Extrinsic evidence is inadmissible to contradict a clear contract term, but if a term is

7  ambiguous, its interpretation depends on the parties' intent at the time of the contract's

8  execution . . ."  Pierce County Hotel Emp. & Restaurant Emp. Health Trust v. Elks

9  Lodge, 827 F.2d 1324, 1327 (9th Cir. 1987) (internal citations omitted).  Here, the terms

10  of the "forum selection" provisions in the Lease Agreements are clearly worded in non-

11  mandatory terms.  There is nothing in the clauses commanding where a lawsuit must be

12  filed, let alone mandating that any litigation must be initiated in Missouri.  In fact, the

13  clauses do not even use the words "venue" or "forum," but merely provide Missouri

14  courts with jurisdiction if a lawsuit is filed there.  Accordingly, the Court finds that the

15  forum selection clauses at issue are permissive, rather than mandatory, and do not bar

16  litigating this dispute in the Eastern District of California.  Defendants have cited to no

17  authority to support a reading that would confine the forum to Missouri.[4]

18  ///

19

20  [3] The parties agree that federal law applies to interpreting forum selection clauses in diversity
    actions.  See ECF No. 6 at 10; ECF No. 10 at 11-12; see also Manetti-Farrow, Inc. v. Gucci Am., Inc.,
21  858 F.2d 509, 513 (9th Cir. 1988) ("[F]ederal law also applies to interpretation of forum selection
    clauses.").

22  [4] On April 4, 2013, after this matter had been submitted, Defendants filed an Amended Declaration
    of Michael Hynes in support of their motion to dismiss.  (ECF No. 16.)  Attached to this late-filed
23  Declaration is a copy of the document, which Plaintiff Folk allegedly used as a template to draft the Lease
    Agreements at issue.  Defendant Hynes asserts that the only input he had on the changes, to which Hynes
24  agreed, was taking out the word "Illinois" in the template and replacing it with "Missouri."  (Amended Hynes
    Decl. ¶¶ 3-4.)  The attached document is purportedly offered to demonstrate that the parties intended the
25  forum selection clauses in the Lease Agreements to be mandatory.  The Court's review of the document
    has revealed that the "Governing Law" provision in the template is virtually identical to the "Governing
26  Law" provisions included in the Lease Agreements.  Like the finalized Lease Agreements between the
    parties, the template allegedly used by Folk to draft those Agreements merely contains the parties'
27  consent to jurisdiction of Missouri courts.  Thus, even if the Court agreed to consider this extrinsic
    evidence in interpreting the forum selection clauses at issue, the document attached to the Amended
28  Declaration of Defendant Hynes does not provide any support to Defendants' instant argument that the
    parties agreed to exclusive jurisdiction of Missouri courts.

7

1   Because the contracts between the parties do not contain a mandatory forum

2   selection clause, Plaintiffs are not precluded from bringing their lawsuit in this district.

3   Accordingly, neither dismissal nor transfer of this action is warranted.

4

5   **B.  Transfer under 28 U.S.C. § 1404(a)**

6

7   "For the convenience of parties and witnesses, in the interest of justice, a district

8   court may transfer any civil action to any other district or division where it might have

9   been brought or to any district or division to which all parties have consented."

10  28 U.S.C. § 1404(a).  Section 1404(a)'s goal "is to prevent waste in time, energy and

11  money" and "to protect litigants, witnesses and the public against unnecessary

12  inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  To

13  achieve this goal, Section 1404(a) directs the court to conduct an "individualized, case-

14  by-case consideration of convenience and fairness."[5]  Id. at 622.

15  In the Ninth Circuit, a resident-plaintiff's choice of forum is given substantial

16  weight, especially if the operative events have occurred within the forum.  Decker Coal

17  Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Pac. Car &

18  Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968).  Here, both Plaintiffs are

19  California residents.  Also, as demonstrated by the Complaint, almost all of the events

20  giving rise to this litigation occurred in this forum because Plaintiffs' business, in

21  connection with which Defendants provided consulting services and which they allegedly

22  controlled, is located in California.

23

24  [5] Factors that courts usually consider in deciding whether to grant a motion to transfer under
Section 1404(a) include: "(1) the location where the relevant agreements were negotiated and executed;

25  (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the
respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the

26  chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of
compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to

27  sources of proof."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  However,
because Defendants have not analyzed any of these factors in their moving papers, the Court will limit its

28  analyses to arguments advanced by Defendants.

1    Thus, to disturb Plaintiffs' choice of forum, Defendants must show a "clear balance of

2    inconveniences" against them if the action remains in the original venue.  E. & J. Gallo

3    Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994).  If transfer would

4    merely shift the inconveniences from one party to another, the court should deny a

5    motion to transfer.  Van Dusen, 376 U.S. at 645–46.

6         Defendants argue that transfer under Section 1404(a) is warranted in light of the

7    case pending between the parties in the Western District of Missouri.  (ECF No. 6 at

8    13-15.)  According to Defendants, the instant case and the Missouri Action "arise from

9    not only common facts, but from identical facts, identical witnesses, the same evidence,

10   and will require the same discovery and law and motion practice."  (Id. at 11.)  Thus,

11   Defendants contend, "allowing either [case] to proceed alone down one litigation

12   highway while the other takes some other path would be unreasonable, create

13   significant duplication of effort, [and] waste of judicial resources."  (Id.)

14        Under the generally recognized doctrine of federal comity, a district court may

15   "decline jurisdiction over an action when a complaint involving the same parties and

16   issues has already been filed in another district."  Pacesetter Sys., Inc. v. Medtronic, Inc.,

17   678 F.2d 93, 94-95 (9th Cir. 1982).  Thus, as a general rule, "when two identical actions

18   are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction

19   should try the lawsuit and no purpose would be served by proceeding with a second

20   action."  Id. at 95.  In such cases, the court where the second action was filed may, in its

21   discretion, stay, transfer, or dismiss the later-filed suit.  Cedars–Sinai Med. Center v.

22   Shalala, 125 F.3d 765, 769 (9th Cir.1997).  The "first-to-file" rule serves the purpose of

23   promoting judicial efficiency and "should not be disregarded lightly."  Pacesetter Sys.,

24   678 F.2d at 94.  However, the Ninth Circuit has articulated several exceptions to the

25   "first-to-file" rule, including bad faith, anticipatory suit, and forum shopping.  Alltrade,

26   Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir.1991).

27   ///

28   ///

1    Here, while Defendants argue fiercely that consolidation of the instant action with

2 the action pending in Missouri would promote judicial efficiency, Defendants fail to

3 mention that they filed the Missouri action after Plaintiffs had initiated the instant action.[6]

4 Generally, the "first-to-file" rule favors the forum of the first-filed suit, here California.

5 See Pacesetter Sys., 678 F.2d at 94.  The earlier filing date of this action likely gives the

6 instant action priority over the action pending in the Western District of Missouri.[7]  See

7 In re Ferrero, 768 F. Supp. 2d 1074, 1082 (S.D. Cal. 2011).  Defendants have not

8 presented any arguments or evidence demonstrating that the Court should disregard the

9 "first-to-file" rule because of Plaintiffs' bad faith, anticipatory suit or forum shopping.

10 Accordingly, the pendency of the later-filed Missouri action does not weigh in favor of

11 transfer.

12    Defendants also mention in their moving papers that the convenience of the

13 parties and witnesses requires transferring this action to Missouri because almost all of

14 "dozens of witnesses and thousands of documents," that would be required at trial, "are

15 located or reside in Missouri."  (ECF No. 6 at 11.)  A party arguing that another forum

16 would be more convenient cannot rely on "vague generalizations" as to convenience

17 factors.  Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998).

18 "To demonstrate inconvenience of witnesses, the moving party must identify relevant

19 witnesses, state their location and describe their testimony and its relevance."

20 Williams v. Bowman, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001).  The convenience of

21 non-party witnesses is given more weight than the convenience of party witnesses.

22 Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005).  Here, Defendants

23 do not mention a single non-party witness who would be inconvenienced if this case is

24 litigated in the Eastern District of California.  They also do not explain why it would be

25 overly burdensome for them to produce documentary evidence for trial in this district.

26    [6] Plaintiffs initiated the instant litigation on October 4, 2012, (see ECF No. 2-1), while the Missouri
27 Action was not filed until December 10, 2012, (see ECF No. 6 at 7.)

28    [7] In fact, Plaintiffs indicated in their opposition memorandum that they plan to file a motion to
transfer the Missouri Action to the Eastern District of California.  (ECF No. 10 at 14.)

It appears that Defendants merely seek to shift inconvenience of travel from themselves to Plaintiffs, which is not a valid ground for transfer under Section 1404(a).  <u>See</u> <u>Van Dusen</u>, 376 U.S. at 645–46.

Because Defendants have not made a "strong showing" of inconvenience as required to upset Plaintiffs' choice of forum, <u>see</u> <u>Decker Coal Co.</u>, 805 F.2d at 843, the Court denies their motion to transfer pursuant to Section 1404(a).

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer (ECF No. 6) is DENIED.

IT IS SO ORDERED.

DATED:  April 8, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE