UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO E.D.M., INC., a California Corporation; DAN FLOCK, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>HYNES AVIATION INDUSTRIES, INC., at el.,<br><br>    Defendants. | No.  2:13-cv-00288-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

This case arises out of a decade-long business relationship in which Defendant Michael Hynes ("Hynes") provided business consulting services to Plaintiffs Sacramento E.D.M., Inc. ("SAC EDM") and SAC EDM's President, Dan Folk ("Folk").

///

///

///

///

///

///

///

1

Plaintiffs filed the instant lawsuit in the Superior Court of California, County of Sacramento, against Hynes and two corporate Defendants, Hynes Aviation Industries, Inc. ("HAI") and Hynes Children TF Limited ("HCTF"), alleging the following causes of action: (1) Breach of Fiduciary Duty; (2) Fraud; (3) Constructive Fraud; (4) Intentional Interference with Prospective Business Advantage; (5) Negligent Interference with Prospective Business Advantage; (6) Tortious Interference with Contract; (7) Unjust Enrichment; (8) Unfair Business Practices in Violation of California Business and Professions Code § 17200; and (9) Declaratory Relief.  (ECF No. 2-1.)  On February 14, 2013, Defendants removed the action to this Court on the basis of diversity jurisdiction.  (ECF No. 2.)  Presently before the Court is Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to the Unites States District Court for the Western District of Missouri.  (ECF No. 6.)  Plaintiffs oppose Defendants' Motion.  (ECF No. 10.)  For the reasons detailed below, the Court DENIES Defendants' motion.

## BACKGROUND[1]

The facts relevant to Defendants' Motion are as follows.  SAC EDM is a California corporation, with the principal place of business in the County of Sacramento, engaged in the business of electrical discharge machining and waterjet technology.  Defendant Hynes is a professional consultant, among other things, in the fields of aviation safety and business and finance.  Hynes is also the President and Chairmen of Defendants HAI and HCTF.  (Declaration of Michael Hynes in Support of Defendants' Motion to Dismiss ("Hynes Decl."), ECF No. 7 ¶ 2.)

Since 2003, Hynes has been providing business and financial consulting services to Folk and SAC EDM.

///

---

[1] Unless otherwise noted, the following facts are derived, at times verbatim, from Plaintiffs' Complaint, attached as Exhibit 2 to Defendants' Notice of Removal.  (ECF No. 2-1.)
[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless

In January 2004, HAI and SAC EDM entered into a contract whereby Hynes would provide consulting services to SAC EDM and also provide operating capital as necessary. According to the contract, Folk would be entitled to 52.2% of SAC EDM's net profit after tax, and Hynes would be entitled to 47.5% of SAC EDM's net profits after tax. That agreement allegedly created a "business partnership" between the parties and provided Hynes with the full financial control over SAC EDM. (Compl. ¶¶ 17-18.)

In furtherance of their business relationship, in August 2004 and October 2006, the parties entered into two Master Lease Agreements ("Lease Agreements") pursuant to which Defendant Hynes purchased office and manufacturing equipment which it then leased to SAC EDM. (ECF No. 6 at 6; Declaration of Paul W. Tozer in Support of Defendants' Motion to Dismiss ("Tozer Decl."), ECF No. 8 at 11, 19.) Both Lease Agreements contained the following "Governing Law" provision:

> THIS LEASE IS GOVERNED BY THE LAW OF MISSOURI AND YOU CONSENT TO THE JURISDICTION OF ANY COURT LOCATED WITHIN MISSOURI AND EXRESSLY WAIVE THE RIGHT TO A TRIAL BY JURY.

(Id. at 15, 23.)

According to the Complaint, in mid-2003, Defendants advised Folk that SAC EDM was paying too much on its leases for the operating equipment and convinced Folk to stop making payments on those leases. Defendants allegedly proposed a plan under which SAC EDM would cease making its lease payments and would renegotiate the lease terms with its lender U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp"). As alleged, Hynes promised to Plaintiffs that, if the lender refuses to renegotiate the terms of the lease and would get a judgment against SAC EDM, Defendants would purchase the judgment from the lender for a reduced rate and would allow SAC EDM to repay this reduced debt instead of the amount of the original judgment.

SAC EDM allegedly followed Hynes' advice and stopped making payments to U.S. Bancorp, which led to a judgment being entered against SAC EDM for more than $280,000.

As agreed upon between the parties, Defendants purchased the judgment from U.S. Bancorp for a reduced amount of $50,000.  However, contrary to their prior promise, Defendants allegedly demanded that SAC EDM pay the full amount of the judgment.

According to the Complaint, Defendants also took control of many of the expenses of SAC EDM and unilaterally determined that the company had insufficient capital to service its debts and expenses.  Plaintiffs allege that Defendants subsequently engaged in self-dealing by making "clandestine loans" to SAC EDM and then charging it interest of those loaned amounts.  (Compl. ¶ 22.)  Further, according to Plaintiffs, Defendants "routinely" arranged for the "sale" of SAC EDM's equipment to themselves, which led to Defendants taking ownership of most of SAC EDM's equipment.  (Id. ¶ 27.)  Then, Defendants leased the equipment back to SAC EDM at high rates.  When SAC EDM could not pay those rates, Defendants allegedly made additional loans to SAC EDM and charged it additional interest.  Thus, as alleged, Defendants created a situation in which SAC EDM could never repay them for the debts that Defendants themselves created by their own unilateral actions.  Further, each time Defendants bought equipment from SAC EDM, they treated the sale proceeds as "profit" for SAC EDM, which entitled them to 47.5% according to the parties' agreement.  (Id. ¶ 30.)  Overall, Defendants purchased at least 17 individual pieces of equipment from SAC EDM, yielding a "profit" for Defendants of over $118,750.  (Id.)

Hynes and SEDM are currently opposing parties in litigation pending in the United States District Court for the Western District of Missouri, entitled Hynes Aviation Industries, Inc. v. Sacramento E.D.M., Inc., and Daniel Folk, Case No. 6:12-CV-03521 ("Missouri Action"), filed December 10, 2012.  (ECF No. 6 at 7; Tazer Decl. ¶ 2.)  According to Defendants, Plaintiffs have been served with the summons and complaint in the Missouri Action.  (ECF No. 6 at 7.)  Defendants assert that the instant case and the Missouri Action raise the same or substantially similar issues of law and fact.  (Id. at 11.)

///

**ANALYSIS**

Through their Motion, Defendants seek dismissal or transfer of this action for improper venue pursuant to Federal Rule of Civil Procedure[2] 12(b)(3) and 28 U.S.C. § 1406(a) based on the forum selection clauses in the Lease Agreements or, in the alternative, a transfer to the U.S. District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).  (ECF No. 6 at 5.)

**A.  Forum Selection Clauses**

Parties may by contract designate a forum in which any litigation is to take place. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).  In this circuit, a motion to dismiss based on the forum selection clause is construed as a Rule 12(b)(3) motion to dismiss for improper venue.  Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009).  In considering a Rule 12(b)(3) motion, "the pleadings need not be accepted as true and the court may consider facts outside of the pleadings."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted).  When faced with contested facts bearing on the impact of a forum selection clause, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Id. at 1138.  If the court determines that a forum selection clause is valid and enforceable, the court may dismiss a case or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Courts often characterize forum-selection clauses as either "permissive" or "mandatory."  For a clause to be mandatory, it "must contain language that clearly designates a forum as the exclusive one."

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1  N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037
2  (9th Cir. 1995).  A permissive clause, on the other side, does not contain language
3  clearly requiring exclusive jurisdiction.  Hunt Wesson Foods, Inc. v. Supreme Oil Co.,
4  817 F.2d 75, 77 (9th Cir. 1987).  Permissive forum selection clauses do not mandate,
5  but merely allow, an action to be filed in the specified forum.  Id.

6  "When only jurisdiction is specified[,] the clause will generally not be enforced
7  without some further language indicating the parties' intent to make jurisdiction
8  exclusive."  Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989).  The
9  Ninth Circuit's decision in Hunt Wesson Foods is instructive.  In that case, the court of
10 appeals concluded that a contractual provision stating that "courts of California, County
11 of Orange, shall have jurisdiction" over the parties' contractual disputes was permissive,
12 rather than mandatory.  817 F.2d at 77-78.  The Ninth Circuit explained:

> Here, the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action.  The language says nothing about the Orange County courts having exclusive jurisdiction.  The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. . . . Thus, [defendant] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction.  Such consent to jurisdiction, however, does not mean that the same subject matter cannot be litigated in any other court.  In other words, the forum selection clause in this case is permissive rather than mandatory.

20 Id. at 77.
21 The forum selection clauses in the parties' Lease Agreements, like the clause in
22 Hunt Wesson Foods, merely provide that the parties "consent to the jurisdiction of any
23 court located within Missouri."  (ECF No. 8 at 15, 23.)  Thus, the clauses at issue are
24 permissive and do not bar Plaintiffs from filing this action in California.
25 Defendants, however, contend that the forum selection clauses are mandatory
26 because the parties intended to designate Missouri courts as exclusive venue for their
27 disputes, and that Defendant Hynes would not have agreed to enter into the Lease
28 Agreements had he known that the forum selection clauses were non-mandatory.

6

(ECF No. 12 at 1; Hynes Decl., ECF No. 7 ¶ 6.)  In interpreting a forum selection clause, courts look to "general principles for interpreting contracts."[3]  Doe 1, 552 F.3d at 1081.  Contract terms should be "given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999). "Extrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous, its interpretation depends on the parties' intent at the time of the contract's execution . . ." Pierce County Hotel Emp. & Restaurant Emp. Health Trust v. Elks Lodge, 827 F.2d 1324, 1327 (9th Cir. 1987) (internal citations omitted).  Here, the terms of the "forum selection" provisions in the Lease Agreements are clearly worded in non-mandatory terms.  There is nothing in the clauses commanding where a lawsuit must be filed, let alone mandating that any litigation must be initiated in Missouri.  In fact, the clauses do not even use the words "venue" or "forum," but merely provide Missouri courts with jurisdiction if a lawsuit is filed there.  Accordingly, the Court finds that the forum selection clauses at issue are permissive, rather than mandatory, and do not bar litigating this dispute in the Eastern District of California.  Defendants have cited to no authority to support a reading that would confine the forum to Missouri.[4]

///

---

[3] The parties agree that federal law applies to interpreting forum selection clauses in diversity actions.  See ECF No. 6 at 10; ECF No. 10 at 11-12; see also Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988) ("[F]ederal law also applies to interpretation of forum selection clauses.").

[4] On April 4, 2013, after this matter had been submitted, Defendants filed an Amended Declaration of Michael Hynes in support of their motion to dismiss. (ECF No. 16.)  Attached to this late-filed Declaration is a copy of the document, which Plaintiff Folk allegedly used as a template to draft the Lease Agreements at issue.  Defendant Hynes asserts that the only input he had on the changes, to which Hynes agreed, was taking out the word "Illinois" in the template and replacing it with "Missouri." (Amended Hynes Decl. ¶¶ 3-4.)  The attached document is purportedly offered to demonstrate that the parties intended the forum selection clauses in the Lease Agreements to be mandatory.  The Court's review of the document has revealed that the "Governing Law" provision in the template is virtually identical to the "Governing Law" provisions included in the Lease Agreements.  Like the finalized Lease Agreements between the parties, the template allegedly used by Folk to draft those Agreements merely contains the parties' consent to jurisdiction of Missouri courts.  Thus, even if the Court agreed to consider this extrinsic evidence in interpreting the forum selection clauses at issue, the document attached to the Amended Declaration of Defendant Hynes does not provide any support to Defendants' instant argument that the parties agreed to exclusive jurisdiction of Missouri courts.

Because the contracts between the parties do not contain a mandatory forum selection clause, Plaintiffs are not precluded from bringing their lawsuit in this district. Accordingly, neither dismissal nor transfer of this action is warranted.

**B.  Transfer under 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Section 1404(a)'s goal "is to prevent waste in time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  To achieve this goal, Section 1404(a) directs the court to conduct an "individualized, case-by-case consideration of convenience and fairness."[5]  Id. at 622.

In the Ninth Circuit, a resident-plaintiff's choice of forum is given substantial weight, especially if the operative events have occurred within the forum.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968).  Here, both Plaintiffs are California residents.  Also, as demonstrated by the Complaint, almost all of the events giving rise to this litigation occurred in this forum because Plaintiffs' business, in connection with which Defendants provided consulting services and which they allegedly controlled, is located in California.

---

[5] Factors that courts usually consider in deciding whether to grant a motion to transfer under Section 1404(a) include: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  However, because Defendants have not analyzed any of these factors in their moving papers, the Court will limit its analyses to arguments advanced by Defendants.

Thus, to disturb Plaintiffs' choice of forum, Defendants must show a "clear balance of inconveniences" against them if the action remains in the original venue. E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994). If transfer would merely shift the inconveniences from one party to another, the court should deny a motion to transfer. Van Dusen, 376 U.S. at 645–46.

Defendants argue that transfer under Section 1404(a) is warranted in light of the case pending between the parties in the Western District of Missouri. (ECF No. 6 at 13-15.) According to Defendants, the instant case and the Missouri Action "arise from not only common facts, but from identical facts, identical witnesses, the same evidence, and will require the same discovery and law and motion practice." (Id. at 11.) Thus, Defendants contend, "allowing either [case] to proceed alone down one litigation highway while the other takes some other path would be unreasonable, create significant duplication of effort, [and] waste of judicial resources." (Id.)

Under the generally recognized doctrine of federal comity, a district court may "decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). Thus, as a general rule, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." Id. at 95. In such cases, the court where the second action was filed may, in its discretion, stay, transfer, or dismiss the later-filed suit. Cedars–Sinai Med. Center v. Shalala, 125 F.3d 765, 769 (9th Cir.1997). The "first-to-file" rule serves the purpose of promoting judicial efficiency and "should not be disregarded lightly." Pacesetter Sys., 678 F.2d at 94. However, the Ninth Circuit has articulated several exceptions to the "first-to-file" rule, including bad faith, anticipatory suit, and forum shopping. Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir.1991).

///

///

Here, while Defendants argue fiercely that consolidation of the instant action with the action pending in Missouri would promote judicial efficiency, Defendants fail to mention that they filed the Missouri action after Plaintiffs had initiated the instant action.[6] Generally, the "first-to-file" rule favors the forum of the first-filed suit, here California. See Pacesetter Sys., 678 F.2d at 94.  The earlier filing date of this action likely gives the instant action priority over the action pending in the Western District of Missouri.[7] See In re Ferrero, 768 F. Supp. 2d 1074, 1082 (S.D. Cal. 2011).  Defendants have not presented any arguments or evidence demonstrating that the Court should disregard the "first-to-file" rule because of Plaintiffs' bad faith, anticipatory suit or forum shopping. Accordingly, the pendency of the later-filed Missouri action does not weigh in favor of transfer.

Defendants also mention in their moving papers that the convenience of the parties and witnesses requires transferring this action to Missouri because almost all of "dozens of witnesses and thousands of documents," that would be required at trial, "are located or reside in Missouri."  (ECF No. 6 at 11.)  A party arguing that another forum would be more convenient cannot rely on "vague generalizations" as to convenience factors.  Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998). "To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." Williams v. Bowman, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001).  The convenience of non-party witnesses is given more weight than the convenience of party witnesses. Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005).  Here, Defendants do not mention a single non-party witness who would be inconvenienced if this case is litigated in the Eastern District of California.  They also do not explain why it would be overly burdensome for them to produce documentary evidence for trial in this district.

---

[6] Plaintiffs initiated the instant litigation on October 4, 2012, (see ECF No. 2-1), while the Missouri Action was not filed until December 10, 2012, (see ECF No. 6 at 7.)

[7] In fact, Plaintiffs indicated in their opposition memorandum that they plan to file a motion to transfer the Missouri Action to the Eastern District of California.  (ECF No. 10 at 14.)

It appears that Defendants merely seek to shift inconvenience of travel from themselves to Plaintiffs, which is not a valid ground for transfer under Section 1404(a).  See Van Dusen, 376 U.S. at 645–46.

Because Defendants have not made a "strong showing" of inconvenience as required to upset Plaintiffs' choice of forum, see Decker Coal Co., 805 F.2d at 843, the Court denies their motion to transfer pursuant to Section 1404(a).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer (ECF No. 6) is DENIED.

IT IS SO ORDERED.

DATED:  April 8, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE