Robert C. Bowman, Jr. (SBN: 232388)
Sean Gavin (SBN: 251124)
THE LAW OFFICE OF BOWMAN & ASSOCIATES
A Professional Corporation
3841 North Freeway Blvd, Suite 185
Sacramento, CA 95834
T: 916.923.2800
F: 916.923.2828
E: sgavin@bowmanandassoc.com

Attorneys for Plaintiffs,
SACRAMENTO E.D.M., INC. and DAN FOLK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO E.D.M., INC., a
California corporation; DAN FOLK, an
individual.
                    Plaintiffs,

        v.

HYNES AVIATION INDUSTRIES,
INC. dba HYNES AVIATION
SERVICES, an Oklahoma corporation;
HYNES CHILDREN TF LIMITED, a
business entity, form unknown;
MICHAEL K. HYNES, an individual;
and DOES 1 through 50, inclusive,

                    Defendants.

Case No.:  2:13-CV-00288-MCE-KJN

**PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE
RULES 12(b)(6), 8(a) and 9(b)**

**Date:        June 27, 2013**
**Time:        2:00 p.m.**
**Courtroom: 7**
**Before:    The Honorable Morrison
              C. England, Jr.**

### INTRODUCTION

        Defendants' Motion to Dismiss advances two main arguments.  First, Defendants

contend that Plaintiffs have failed to allege the existence of an underlying enforceable contact.

Second, Defendants argue that the balance of Plaintiffs' causes of action are predicated on tort

theories and therefore improperly pursue tort damages for a breach of contract case.  As more

fully explained below, each premise of Defendants' Motion is faulty, and each of Plaintiffs'

causes of action is sufficient to survive this challenge. On that basis, Plaintiffs respectfully

request that this Court DENY the instant motion.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) allows a court to grant a motion to dismiss for failure to state a claim upon which relief can be granted.  For motions based on FRCP Rule 12(b)(6), the burden of proof is on the moving party.  <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375 (1994).

The court must decide whether the facts alleged, if true, would entitle Plaintiff to some form of legal remedy.  Unless the answer is unequivocally "no," the motion must be denied.  <u>Conley v. Gibson</u>, 355 US 41 (1957).  Thus, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balisteri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

At this stage of the proceedings, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir., 1996).  A complaint should not be dismissed unless a Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Parks School of Business, Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir.1995).

Rule 8(a)(2) requires that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

## STATEMENT OF FACTS

This litigation concerns the decade-long business relationship and concomitant transactions between Plaintiffs and Defendants.  The following facts are as they appear in Plaintiffs' original Complaint (See Docket #2-1).

Plaintiff SACRAMENTO E.D.M., INC. ("SAC EDM") is a waterjet and Electrical Discharge Machining facility with more than 30 years of experience in the business of electrical discharge machining and waterjet technology.  Plaintiff's President is Dan Folk, an individual.

Defendant DR. HYNES is a professional consultant, among other things, in the fields of Aviation Safety and Business and Finance.

1    Defendant DR. HYNES is also a paid professional mediator and arbitrator for the State

2    of Oklahoma Supreme Court, the U.S. Department of Agriculture, and the U.S. Postal Service.

3    In 2000, Mr. Folk was a Plaintiff in an unrelated lawsuit that involved aviation safety.

4    Consequently, Mr. Folk, through his counsel of record in that matter, hired DR. HYNES as an

5    expert witness in that case in 2001.

6    Following the completion of that matter, DR. HYNES contacted Mr. Folk and suggested

7    he could help Mr. Folk in the operation and development of SAC EDM.

8    Mr. Folk was intrigued by this solicitation, and therefore invited DR. HYNES to meet

9    and discuss his plans.

10    As a result of this solicitation, in the spring of 2003, Defendant DR. HYNES, through

11    and on behalf of Defendant HYNES AVIATION INDUSTRIES, INC. ("HAI"), began

12    providing consulting services to SAC EDM.  Thereafter, in December, 2003, DR. HYNES lent

13    $10,000 to SAC EDM.

14    Thereafter, in January, 2004, HAI and SAC EDM entered into a business agreement

15    whereby HAI and DR. HYNES would act as a consultant for SAC EDM and would also provide

16    operating capital as necessary.  This created a business partnership between Plaintiffs and

17    DEFENDANTS.

18    The business agreement also provided that Mr. Folk would be entitled to 52.5% of SAC

19    EDM's net profits after tax, and that DR. HYNES would be entitled to 47.5% of SAC EDM'S

20    net profits after tax. Thereafter, Mr. Folk ceded all financial control of the company to DR.

21    HYNES.

22    In mid-2003, DEFENDANTS advised Mr. Folk that SAC EDM was paying too much on

23    the leases for its operating equipment.  Consequently, DEFENDANTS convinced Mr. Folk to

24    completely stop making payments on those leases.  The plan that DEFENDANTS proposed was

25    to continue using the equipment after ceasing the lease payments, and to contact the lender, US

26    Bancorp Equipment Finance, Inc., to renegotiate the terms of the lease.  DR. HYNES further

27    explained that if the lender refused to renegotiate the terms of the lease, it would get a judgment

28    against SAC EDM for the defaulted lease payments.  Subsequently, DR. HYNES explained, he

1 would purchase the judgment from US Bancorp Equipment Finance, Inc. for a reduced rate, and

2 would permit SAC EDM to repay this reduced debt instead of the amount of the original

3 judgment.

4      In reality, DEFENDANTS did not follow through on their plan.  Specifically, after they

5 convinced SAC EDM to cease making payments, DR. HYNES, through HYNES CHILDREN

6 TF LIMITED, purchased the judgment from US Bancorp Equipment Finance, Inc. for $50,000.

7 Instead of only charging SAC EDM this reduced amount, however, DR. HYNES and HYNES

8 CHILDREN TF LIMITED are now seeking to enforce the entirety of the judgment, with

9 interest, by means of, inter alia, harassing Orders for Examination and subpoenas for SAC

10 EDM's and Mr. Folk's personal tax records.

11      Neither HAI nor HYNES CHILDREN TF LIMITED has ever obtained from the

12 California Secretary of State a certificate of qualification to be permitted to transact intrastate

13 business, such as purchasing and pursuing a money judgment.

14      Furthermore, DEFENDANTS did more than merely provide consulting services to SAC

15 EDM.  Rather, DEFENDANTS took control of many of the expenses of the company.

16 Specifically, DEFENDANTS unilaterally determined that SAC EDM had insufficient capital to

17 service its debt and expenses.  Instead of working with Mr. Folk to reduce those obligations,

18 however, DEFENDANTS engaged in self-dealing whereby they made clandestine loans to SAC

19 EDM and then charged SAC EDM interest on those loaned amounts.  This was despite the fact

20 that DEFENDANTS had arranged SAC EDM'S expenses in such a way as to ensure that the

21 original obligations could not be serviced, let alone these new interest-bearing loan obligations.

22      One example of this self-dealing scheme came in the form of life insurance.

23 Specifically, DR. HYNES insisted that he and Mr. Folk take out life insurance policies and

24 name the other as beneficiary.  DR. HYNES explained that this would be useful because if he

25 died, SAC EDM would no longer have access to capital, and if Mr. Folk died, SAC EDM would

26 be unable to repay its loans to DEFENDANTS.  Based on these statements, Mr. Folk agreed.

27      In approximately October, 2007, Mr. Folk obtained a term life insurance policy for

28 himself, naming DR. HYNES as the beneficiary, at a cost of approximately $63 per month.  DR.

HYNES also took out a policy, but his cost was approximately $1,560 per month.  Moreover, Defendant HAI actually held the policies, and invoiced SAC EDM the approximately $1,600 monthly premiums.  This was despite knowing that SAC EDM could not afford this additional expense.  As a result, HAI treated the unpaid $1,600 monthly invoices to SAC EDM as loans, and charged 10% on them.

Additionally, DR. HYNES complained that he did not want Mr. Folk to be able to cancel the policy, so he insisted that the he "own" it.  He suggested that he would not call the loans due immediately if Mr. Folk agreed to this, and so Mr. Folk did.  Thereafter, DR. HYNES converted Mr. Folk's policy from a "term life" policy to a "whole life" policy.  This maneuver had two effects: it substantially raised the cost (to approximately $350 per month), and it created ongoing value for the policy holder, who was now DR. HYNES.

Therefore, DEFENDANTS life insurance scheme yielded a result wherein SAC EDM paid for a life insurance product that accrued value for DR. HYNES, and DR. HYNES, through HAI, also made a 10% return on its "investment" of the premium amounts it charged back to SAC EDM, all of which was secured by the value of the policy DR. HYNES had convinced Mr. Folk to purchase in the first place.

Additionally, DEFENDANTS routinely arranged for the "sale" of SAC EDM's equipment to themselves, for the purported purpose of reducing the loan debt SAC EDM owed to DEFENDANTS.  Over time, DEFENDANTS slowly took ownership of most of SAC EDM's equipment, and then leased it back to SAC EDM at rates that were extremely favorable to DEFENDANTS.  When SAC EDM could not afford those payments – a circumstance that DEFENDANTS not only knew of but in fact created – DEFENDANTS made additional loans, on which they charged additional interest.  The result was that SAC EDM could never afford to repay DEFENDANTS for the debts that DEFENDANTS created by their own unilateral actions.

Specifically, DEFENDANTS leased back the equipment it "bought" from SAC EDM for the cost of the equipment plus 10%, plus an additional 10% for "taxes and insurance" (even though SAC EDM already paid to insure the equipment and there were no taxes owed on the

1  equipment), plus an additional 10% for interest, plus 10% for "overhead and profit" (even

2  though there was no explanation of what this "overhead" could possibly be).

3         The result was that DEFENDANTS unilaterally consummated the sale of SAC EDM's

4  equipment on paper, then leased the equipment back to SAC EDM at such an exorbitant rate

5  that SAC EDM would never be able to pay the leases off.

6         Further, each time DEFENDANTS bought equipment from SAC EDM, it treated the

7  sale proceeds as profit for SAC EDM, of which DEFENDANTS were entitled to 47.5%.

8  Consequently, from 2004 through 2009, DEFENDANTS purchased no fewer than 17 individual

9  pieces of equipment, yielding a "profit" of more than $250,000 (which DEFENDANTS claim

10  entitled them to more than $118,750).

11         Plaintiffs relied on DEFENDANTS' aforementioned representations when entering into

12  the aforementioned transactions.

13  **ARGUMENT**

14         Defendants' objection to Plaintiffs' complaint appears to be twofold.  First, Defendants'

15  argue "Plaintiffs have failed to allege the existence of an underlying enforceable contact or

16  contractual relationship.  Plaintiffs allege the existence of contracts but fail to allege

17  foundational elements required to prove there was a contract."  Defendants' Memorandum of

18  Points and Authorities in Support of Motion to Dismiss (hereinafter "Defendants' Motion")

19  (Docket #20), Page 3, Lines 17-19.

20         Second, Defendants contend that "plaintiffs are attempting to use a breach of contract

21  case to recover tort damages."  Defendants' Motion (Docket #20), Page 1, Line 27.

22         Each of these arguments is faulty and should not support the requested dismissal.

23     **A.  Though Not Required, Plaintiffs Have Alleged the Existence of a Contractual**

24        **Relationship.**

25         Defendants argue "[n]othing alleged provides whether the contract was written, the date

26  of contract formation, contract signatories, or dates of purported breach." Defendants' Motion

27  (Docket #20), Page 3, Lines 22-24.

28

---

1   Initially, Plaintiffs must note that this line of argument – and indeed the main thrust of

2   Defendants' entire Motion – is premised on the defective notion that Plaintiffs pursue a breach

3   of contract claim.  In reality, Plaintiffs' Complaint does not presently contain a cause of action

4   for Breach of Contract.  Rather, Plaintiffs allege a set of tort causes of action based on

5   Defendants' fraudulent conduct with respect to their business dealings with Plaintiffs.

6   Therefore, the bulk of Defendants' argument is misplaced.

7   Notwithstanding this deficit, Defendants' Motion is also inaccurate insofar as it

8   maintains that "[a]ll nine claims require an underlying contract and none is provided by the

9   Complaint.  A breach of contract claim, designated tortious or otherwise, requires plaintiffs to

10   allege properly what specific contract they allude to."  Defendants' Motion (Docket #20), Page

11   2, Lines 13-15.

12   Quite simply, this is not true.  Further, even if it were true, Plaintiffs have pled: "[…][i]n

13   January, 2004, HAI and SAC EDM entered into a business agreement whereby HAI and DR.

14   HYNES would act as a consultant for SAC EDM and would also provide operating capital as

15   necessary.  This created a business partnership between Plaintiffs and DEFENDANTS." See

16   Complaint (Docket #2-1), ¶17.  "The business agreement also provided that Mr. Folk would be

17   entitled to 52.5% of SAC EDM's net profits after tax, and that DR. HYNES would be entitled to

18   47.5% of SAC EDM'S net profits after tax. Thereafter, Mr. Folk ceded all financial control of

19   the company to DR. HYNES."  See Complaint (Docket #2-1), ¶18.

20   Therefore, even if each of Plaintiffs' tort causes of action required an underlying

21   contractual relationship (which they do not), Plaintiffs have satisfied this phantom burden.

22   **B.  Each of Plaintiffs' Tort Causes of Action are Properly Pled**

23   Secondarily, Defendants argue that Plaintiffs' tort claims are invalid because "tort

24   damages are not allowed for breach of contract."  Defendants' Motion (Docket #20), Page 3,

25   Line 15.  Defendants cite <u>JRS Products, Inc. v. Matsushita Electric Corporation of America</u>, 115

26   Cal.App.4th 169 (2004) for the proposition that tort claims arising from a Breach of Contract

27   claim are not separately actionable.  This argument misses the mark for the simple reason that

28   Plaintiffs are not seeking tort remedies for a breach of contract; they are seeking damages for

1   fraud in inducing them to enter into the contractual relationship in the first place.  These claims

2   are sufficiently alleged such that the Complaint, taken as a whole and construed in the light

3   most favorable to the Plaintiffs, is sufficient to plausibly suggest that the Plaintiffs are entitled

4   to relief.  See <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007).

5        Next, Defendants contend that Plaintiffs' allegations of Fraud are not pled with

6   sufficient particularity.  Plaintiffs disagree, and suggest that the Complaint contains sufficient

7   detail to apprise Defendants of the particular misconduct alleged to constitute the Fraud to

8   enable them to defend against the charges and not just deny that they have done anything

9   wrong.  See <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir., 2001).

10  **C. Each of Plaintiffs' Causes of Action Should Survive This Motion**

11       The balance of Defendants' Motion is a summary of arguments targeting each cause of

12  action individually.  None of these arguments is persuasive, and as a result Plaintiffs'

13  respectfully request that this Court deny the instant Motion.

14       1.   <u>First Cause of Action (Breach of Fiduciary Duty)</u>

15       Defendants begin by dismissively characterizing Plaintiffs' claim for Breach of

16  Fiduciary Duty as an attempted "end-run [of] the rules prohibiting tort damages in a contract

17  case."  Defendants' Motion (Docket #20), Page 6, Lines 23 – 25.  This position ignores the fact

18  that Plaintiffs have alleged they were in a business partnership with Defendants, and ceded all

19  financial control of their company to Defendants.  See Complaint (Docket #2-1), ¶¶17 – 18.  It

20  is well settled that partners in a partnership maintain a confidential or fiduciary relationship to

21  one another.  <u>Rosenfeld, Meyer & Susman v. Cohen</u>, 191 Cal.App.3d 1035, 1057-1059 (1987).

22  Furthermore, confidential relations may be said to exist whenever trust and confidence are

23  reposed by one person in the integrity and fidelity of another.  <u>Kloehn v. Prendiville</u>, 154

24  Cal.App.2d 156, 160-161 (1957).  Finally, the existence of a confidential relationship is

25  generally a question of fact.  <u>Barbara A. v. John G.</u>, 145 Cal.App.3d 369, 383-384 (1983).

26       Partners owe fiduciary duties of disclosure to each other regarding the partnership

27  business and assets.  A failure to properly account for the business and assets can constitute a

28  breach of the duty. <u>Rosenfeld, Meyer & Susman v. Cohen</u>, supra, 191 Cal.App.3d at 1057-1059.

Here, Plaintiffs have alleged facts sufficient to show that the fiduciary relationship existed (See Complaint [Docket #2-1], ¶¶17, 18, and 35), that Defendants breached it (¶¶36 – 38), and that there were resulting damages (¶¶20, 22 – 27, 29, 30, and 40).  These specific factual allegations support Plaintiffs' cause of action and defeat Defendants' bald contention that "plaintiffs' opinion of the existence of a fiduciary duty lacks any detail justifying the opinion."  Defendants' Motion (Docket #20), Page 6, Lines 21 – 22.

> 2.   Second Cause of Action (Fraud)

As indicated above, Defendants contend that the Fraud cause of action is not pled with sufficient particularity.  Though Defendants appear to cite relevant caselaw on the subject, they almost immediately ignore it.  Indeed, after summarizing the law, Defendants nakedly assert "until plaintiffs properly allege the existence of an enforceable contract, defendants cannot determine what contract plaintiffs might be referring to."  Defendants' Motion (Docket #20), Page 5, Lines 24 – 25.  Defendants' reliance on this argument is ill-founded because it is legally and factually inaccurate.

Initially, this argument is flawed legally.  Indeed, "[a]llegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)."  Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987) (citing Zatkin v. Primuth, 551 F.Supp. 39, 42 (S.D.Cal.1982) and 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 416 & n. 94 (1969). "However, 'the rule may be relaxed as to matters peculiarly within the opposing party's knowledge.'  Such 'an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing.' In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded."  Id. (citations omitted).

Similarly, "Rule 9(b), however, only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations (citing Walling v. Beverly Enterprises, 476 F.2d 393, 397 (1973)).  While mere conclusory allegations of fraud will not suffice, statements of the time, place and nature of the alleged

1  fraudulent activities will."  <u>Bosse v. Crowell Collier & MacMillan</u>, 565 F.2d 602, 611 (9th Cir.,

2  1977).

3          Furthermore, the argument is flawed factually because Plaintiffs have pled the Fraud

4  claims with sufficient particularity.  For example, Plaintiffs have alleged:

5          –   "DEFENDANTS failed to make full disclosure of all material facts in their

6              knowledge regarding SAC EDM's true financial condition when it made the

7              loans described above to SAC EDM.  DEFENDANTS also concealed facts about

8              the exorbitant rates it charged on these loans, and failed to disclose that they

9              would account for the 'sale' of SAC EDM's equipment to DEFENDANTS as a

10             profit of which they were to entitled to 47.5%."  See Complaint (Docket #2-1),

11             ¶46.

12         –   "DEFENDANTS failed to properly account for SAC EDM's business and assets,

13             and instead unilaterally structured SAC EDM's finances in such a way as to

14             necessitate loans on which DEFENDANTS could then charge 10% interest.

15             Essentially, DEFENDANTS forced SAC EDM to be an involuntary debtor and

16             borrower to DEFENDANTS, and used that debt as leverage to force SAC EDM

17             to take on more debt."  See Complaint (Docket #2-1), ¶47.

18         –   "Additionally, DEFENDANTS advised SAC EDM to discontinue making all

19             payments to its equipment lender, US Bancorp Equipment Finance, Inc.

20             DEFENDANTS orchestrated a scenario wherein they were able to purchase a

21             substantial debt against SAC EDM (in the amount of more than $250,000) for

22             $50,000, only to seek repayment of the full debt from SAC EDM."  See

23             Complaint (Docket #2-1), ¶48.

24          These allegations, along with the multiple similar ones included in the Complaint, put

25  Defendants on sufficient notice about what claims they must defend.  Defendants' argument

26  otherwise is unreasonable, and Plaintiffs respectfully request that this Court reject the Motion

27  on this basis.

28

3.   Third Cause of Action (Constructive Fraud [California Civil Code §1573])

Defendants import their argument regarding the Fraud cause of action to the Constructive Fraud cause of action.  Plaintiffs do the same.

4.   Fourth Cause of Action (Intentional Interference with Prospective Business Advantage)

A cause of action exists for Intentional Interference with Prospective Business Advantage if the Defendant disrupts or diverts the business relationship of another by improper methods which fall outside the boundaries of fair competition.  Baldwin v. Marina City Props., Inc., 79 Cal.App.3d 393, 406 (1978).

Plaintiffs have alleged facts sufficient to satisfy these elements. (See, in particular, Complaint [Docket #2-1], ¶69.)

Without being pejorative, Plaintiffs find Defendants' argument regarding this cause of action largely unintelligible.[1]  It appears Defendants may have confused Plaintiffs' claim for Intentional Interference with Prospective Business Advantage with one for Interference with Contract.  In fact, Defendants' only citations to caselaw in this section explicitly include the phrase "the tort claim for interference with contract" twice.  Defendants' Motion (Docket #20), Page 8, Lines 11 and 19.  Such arguments would be more appropriately housed in the section addressing Plaintiffs' sixth cause of action (for Tortious Interference with Contract), and Plaintiff will address them there.  With respect to this cause of action, however, Plaintiffs believe both that the claim is properly pled and that Defendants' objections must fail.

5.   Fifth Cause of Action (Negligent Interference with Prospective Business Advantage)

A cause of action exists for Negligent Interference with Prospective Business Advantage if the Defendant acts unreasonably and wrongfully, albeit not intentionally, so as to foreseeably disrupt a business advantage of another with whom the defendant has a special relationship.

---

[1] Defendants' Motion (Docket #20), Page 8, Lines 3 – 6 are particularly vexing.

1   J'Aire Corp. v. Gregory, 24 Cal.3d 799, 808 (1979).  Plaintiffs have pled facts to satisfy these

2   elements.

3           Once again, however, it appears Defendants have confused a claim for Negligent

4   Interference with Prospective Business Advantage with one for "negligent interference with a

5   contractual relationship."  See Defendants' Motion (Docket #20), Page 8, Line 25.  Moreover,

6   Defendants once again repeat their refrain that "Plaintiffs have not identified the contractual

7   relationship in question."  See Defendants' Motion (Docket #20), Page 9, Lines 4 – 5.  This is

8   simply wrong (see, in particular, Complaint [Docket #2-1], ¶79), and Plaintiffs encourage this

9   Court to reject this flawed argument regardless of how often Defendants deploy it.

10          6.   Sixth Cause of Action (Tortious Interference with Contract)

11          Here, as before, Defendants protest that "Plaintiffs do not identify any contract

12  interfered with or otherwise."  See Defendants' Motion (Docket #20), Page 9, Line 13.  And

13  here, as before, this is untrue.  Indeed, Plaintiffs allege "[p]rior to Plaintiffs' business

14  partnership with DEFENDANTS, SAC EDM had an existing equipment lease with US Bancorp

15  Equipment Finance, Inc.  DEFENDANTS knew of this lease as a result of their business

16  partnership with Plaintiffs."  Complaint (Docket #2-1), ¶84.  Plaintiffs further allege that "[a]s a

17  result of DEFENDANTS advice and urging, SAC EDM ceased making all payments to US

18  Bancorp Equipment Finance, Inc. for the equipment lease.  Thereafter, US Bancorp Equipment

19  Finance, Inc. sought and obtained a judgment against SAC EDM for more than $250,000 as a

20  result of this breach of their contract."  Complaint (Docket #2-1), ¶86.

21          Consequently, Defendants are not "made to guess" the claims against which they must

22  defend themselves.  On this basis, Plaintiffs' respectfully request that this Court reject the

23  Motion regarding this cause of action.

24          7.   Seventh Cause of Action (Unjust Enrichment)

25          The elements of a claim of unjust enrichment include: receipt of a benefit and unjust

26  retention of the benefit at the expense of another.  Lectrodryer v. SeoulBank, 77 Cal.App.4th

27  723, 726 (1992).  Plaintiffs have pled these facts sufficiently.  Nevertheless, Defendants here

28  ignore both these facts as well as the basic legal definition, opting instead to recycle their

1  argument that "[t]he failure of plaintiffs to properly allege the existence and terms of the

2  purported contracts makes impossible any analysis of whether any purported 'enrichments'

3  were 'unjust.'"  See Defendants' Motion (Docket #20), Page 9, Lines 18 – 20.  Essentially,

4  Defendants argue that a "valid" underlying contract <u>might</u> provide for certain "enrichments,"

5  thus making them "just."  A position based on this kind of hypothetical conjecture is

6  unsupported by caselaw, which perhaps explains its dearth in Defendants' Motion.  In any

7  event, Plaintiffs urge this Court to reject this hollow and unpersuasive argument.

8       8.  <u>Eighth Cause of Action (Unfair Business Practices in Violation of California</u>

9          <u>Business and Professions Code §17200)</u>

10  California Business and Professions Code §17200 forbids "any unlawful, unfair or

11  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

12  An <u>unlawful</u> business practice includes anything that can properly be called a business

13  practice and that at the same time is forbidden by law.  <u>Committee on Children's Television,</u>

14  <u>Inc. v. General FoodsCorp.</u>, 35 Cal.3d 197, 209-210 (1983).

15  An <u>unfair</u> practice occurs when it offends an established public policy or when the

16  practice is unethical, oppressive, unscrupulous or substantially injurious to consumers.

17  <u>Podolsky v. First Healthcare Corp.</u>, 50 Cal.App.4th 632 (1996).

18  The test for <u>fraud</u> under §17200 is whether the public is likely to be deceived.  <u>Klein v.</u>

19  <u>Earth Elements, Inc.</u>, 59 Cal.App.4th 965 (1997).

20  Here, Plaintiffs' Complaint alleges facts sufficient to support liability pursuant to at least

21  two of these factors (i.e., <u>unlawful</u> and <u>unfair</u> practices and acts).  Defendants fail to raise any

22  new arguments in opposition to these claims, apart from suggesting that "Plaintiffs raised this

23  identical issue in state court before this action was removed and the argument was rejected."

24  See Defendants' Motion (Docket #20), Page 10, Lines 1 – 2.  Plaintiffs do not know what

25  Defendants are referencing here, but it is inconsequential.  The fact remains that Plaintiffs'

26  cause of action for Unfair Business Practices is sufficient, and Defendants' argument to the

27  contrary is faulty.

28

1    9.   Ninth Cause of Action (Declaratory Relief)

2         The most notable portion of this section is the part wherein Defendants admit that

3    Plaintiffs' claims are predicated on a valid contractual basis.  Specifically, Defendants admit

4    that, "[s]tepping back from the allegations of malicious motives and intentional harm, and

5    accepting them as true for argument **plaintiffs have outlined a possible case for a claim of**

6    **breach of contract."**  This runs contrary to the entirety of Defendants' Motion and highlights

7    the deficiencies contained therein.  Moreover, it does nothing to defeat Plaintiffs' request for

8    Declaratory Relief, as that cause "requires the existence of an actionable claim."  See

9    Defendants' Motion (Docket #20), Page 10, Line 10 (citing Aetna Life Ins. Co. v. Haworth, 300

10   U.S. 227, 239-240 (1937).  As articulated above, Plaintiffs enjoy multiple actionable claims, and

11   as a result their request for Declaratory Relief should remain intact.

12                                CONCLUSION

13        For the foregoing reasons – (1) that the existence of a contractual relationship is not

14   required, and even if it were, Plaintiffs have alleged one; (2) that each of Plaintiffs' tort causes

15   of action are properly pled separately and distinctly from any claim for Breach of Contract; and

16   (3) that each of Plaintiffs' causes of action pleads facts sufficient to constitute their respective

17   elements – Plaintiffs respectfully urge this Court to DENY Defendants' motion in its entirety

18   and order it to file a substantive Answer without delay.

19

20                              Respectfully Submitted,

21                              THE LAW OFFICE OF BOWMAN & ASSOCIATES
                                A Professional Corporation
22   Date: June 13, 2013

23

24                              By:  _/s/ Sean Gavin_____

25                              Sean Gavin (SBN: 251124)
                                Attorneys for Plaintiffs
26                              SACRAMENTO E.D.M., INC. and DAN FOLK

27

28