1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11   SACRAMENTO E.D.M., INC., et al.,          No.  2:13-cv-00288-MCE-KJN

12              Plaintiffs,

13        v.                                    **MEMORANDUM AND ORDER**

14   HYNES AVIATION INDUSTRIES,
     INC., et al.,
15
              Defendants.
16

17        This case arises out of a decade-long business relationship in which Defendant

18   Michael Hynes ("Hynes") provided business consulting services to Plaintiffs Sacramento

19   E.D.M., Inc. ("SAC EDM") and SAC EDM's President, Dan Folk ("Folk") (collectively,

20   "Plaintiffs").  Plaintiffs filed the instant lawsuit in the Superior Court of California, County

21   of Sacramento, against Hynes and two corporate Defendants, Hynes Aviation Industries,

22   Inc. ("HAI") and Hynes Children TF Limited ("HCTF").  Subsequently, Defendants

23   removed the action to this Court on the basis of diversity jurisdiction.  Presently before

24   the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

25   12(b)(6).  (ECF No. 19.)  Plaintiffs oppose Defendants' Motion.  (ECF No. 24.)  For the

26   reasons set forth below, Defendants' Motion will be granted in part and denied in part.[1]

27   _____

28        [1] Because oral argument would not be of material assistance, the Court ordered this matter
     submitted on the briefing.  E.D. Cal. R. 230(g).

1

2

**BACKGROUND**[2]

3      SAC EDM is a California corporation engaged in the business of electrical

4  discharge machining and waterjet technology.  Plaintiff Folk is SAC EDM's president.

5  Defendant Hynes is a professional consultant, among other things, in the fields of

6  aviation safety and business and finance.  Hynes is also a paid professional mediator

7  and arbitrator for the State of Oklahoma Supreme Court, the U.S. Department of

8  Agriculture and the U.S. Postal Service.

9      In 2001, Folk retained Hynes as an expert witness in an unrelated litigation

10  involving aviation safety.  Following the completion of that litigation, Hynes contacted

11  Folk and offered his services in the operation and development of SAC EDM.  As a

12  result of that solicitation, in the spring of 2003, Hynes, through and on behalf of HAI,

13  began providing business and financial consulting services to SAC EDM.  In December

14  2003, Hynes lent $10,000 to SAC EDM.  In January 2004, HAI and SAC EDM entered

15  into a business agreement whereby Hynes and HAI would provide consulting services to

16  SAC EDM and also provide operating capital as necessary.  According to the

17  agreement, Folk would be entitled to 52.2% of SAC EDM's net profits after tax, and

18  Hynes would be entitled to 47.5% of SAC EDM's net profits after tax.  That agreement

19  allegedly created a "business partnership" between the parties and provided Hynes with

20  the full financial control over SAC EDM.  (Compl. ¶¶ 17-18.)

21      According to the Complaint, in 2003, Defendants advised Folk that SAC EDM was

22  paying too much on its leases for the operating equipment and convinced Folk to stop

23  making payments on those leases.  Defendants proposed a plan under which SAC EDM

24  would cease making its lease payments and would renegotiate the lease terms with its

25  lender U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp").

26  ///

27

28  ────────────────────
[2] Unless otherwise noted, the following facts are derived, at times verbatim, from Plaintiffs'
Complaint, attached as Exhibit 2 to Defendants' Notice of Removal.  (ECF No. 2-1.)

1   As alleged, Hynes promised to Plaintiffs that, if the lender refuses to renegotiate the

2   terms of the lease and gets a judgment against SAC EDM, Defendants would purchase

3   the judgment from the lender for a reduced rate and would allow SAC EDM to repay this

4   reduced debt instead of the amount of the original judgment.

5         SAC EDM allegedly followed Hynes's advice and stopped making payments to

6   U.S. Bancorp, which led to a judgment being entered against SAC EDM for more than

7   $280,000.  Subsequently, Hynes, acting through HCTF, purchased the judgment from

8   U.S. Bancorp for a reduced amount of $50,000.  However, contrary to their prior

9   promise, Defendants demanded that SAC EDM pay the full amount of the judgment and

10  are now trying to enforce the judgment in its entirety and with interest.

11        According to the Complaint, Defendants also took control of many of the

12  expenses of SAC EDM and unilaterally determined that the company had insufficient

13  capital to service its debts and expenses.  Plaintiffs allege that Defendants subsequently

14  engaged in self-dealing by making "clandestine loans" to SAC EDM and then charging it

15  interest on those loaned amounts.  (Id. ¶ 22.)  Further, according to Plaintiffs,

16  Defendants "routinely arranged for the 'sale' of SAC EDM's equipment to themselves,"

17  which led to Defendants taking ownership of most of SAC EDM's equipment.  (Id. ¶ 27.)

18  Then, Defendants leased the equipment back to SAC EDM at high rates.  When SAC

19  EDM could not pay those rates, Defendants made additional loans to SAC EDM and

20  charged additional interest.  Thus, as alleged, Defendants created a situation in which

21  SAC EDM could never repay them for the debts that Defendants themselves created by

22  their own unilateral actions.  Further, each time Defendants bought equipment from SAC

23  EDM, they treated the sale proceeds as "profit" for SAC EDM, which entitled them to

24  47.5 percent according to the parties' agreement.  (Id. ¶ 30.)  Overall, Defendants

25  purchased at least 17 individual pieces of equipment from SAC EDM, yielding a "profit"

26  for Defendants of over $118,750.  (Id.)

27        Finally, as alleged, Hynes insisted that he and Folk take out life insurance policies

28  and name each other as a beneficiary.

3

1  According to Hynes's explanation, the life insurance policies would be useful to ensure

2  that (1) SAC EDM would have access to capital in case of Hynes's death, and (2)  SAC

3  EDM would be able to repay its loans to Defendants in case of Folk's death.  Folk

4  agreed with Hynes's suggestion and, in October 2007, obtained a term life insurance

5  policy for himself, naming Hynes as the beneficiary, at a cost of approximately $63 per

6  month.  Hynes also took out a life insurance policy; however, the cost of that policy

7  constituted $1,560 per month.  Moreover, as alleged, HAI actually held the policies, and

8  invoiced SAC EDM for approximately $1,600 every month despite knowing that SAC

9  EDM could not afford this additional expense.  Since SAC EDM could not make the

10  requisite payments, HAI treated the unpaid amounts as loans and charged 10 percent

11  on them.  Subsequently, Hynes proposed that he would not call the loans due

12  immediately if Folk agreed to Hynes "owning" Folk's policy, and Folk accepted Hynes's

13  proposal.  (Id. ¶ 25.)  Thereafter, Hynes converted Folk's policy from a "term life" policy

14  to a "whole life" policy which raised the cost of the policy to approximately $350 per

15  month and also created an ongoing value for Hynes, who was now the policyholder.

16  (Id.)  As alleged, Defendants' "life insurance scheme" yielded a result wherein SAC EDM

17  paid for a life insurance policy that accrued value for Hynes, and Hynes, through HAI,

18  also made a ten percent return on the "investment" of the premium amounts that HAI

19  charged back to SAC EDM.  (Id. ¶ 26.)

20          On October 4, 2012, Plaintiffs filed the instant lawsuit in the Superior Court of

21  California, County of Sacramento, against Hynes, HAI and HCTF, asserting the following

22  causes of action: (1) Breach of Fiduciary Duty; (2) Fraud; (3) Constructive Fraud;

23  (4) Intentional Interference with Prospective Business Advantage; (5) Negligent

24  Interference with Prospective Business Advantage; (6) Tortious Interference with

25  Contract; (7) Unjust Enrichment; (8) Unfair Business Practices in Violation of California

26  Business and Professions Code § 17200; and (9) Declaratory Relief.  (ECF No. 2-1.)  On

27  February 14, 2013, Defendants removed the action to this Court on the basis of diversity

28  jurisdiction.  (ECF No. 2.)

1  Subsequently, Defendants filed a motion to dismiss for improper venue or, in the
2  alternative, to transfer the case to the U.S. District Court for the Western District of
3  Missouri, which the Court denied by its April 8, 2013 Order.  (ECF Nos. 6 & 17.)

4

5  **LEGAL STANDARD**

6

7  On a motion to dismiss for failure to state a claim under Federal Rule of Civil
8  Procedure[3] 12(b)(6), all allegations of material fact must be accepted as true and
9  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.
10  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain
11  statement of the claim showing that the pleader is entitled to relief" in order to "give the
12  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell
13  Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations
14  omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
15  need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
16  'entitlement to relief' requires more than labels and conclusions, and a formulaic
17  recitation of the elements of a cause of action will not do."  Id. at 555 (internal citations
18  and quotations omitted).  A plaintiff's factual allegations must be enough to raise a right
19  to relief above the speculative level.  Id. (citing 5 C. Wright & A. Miller, Federal Practice
20  and Procedure § 1216, at 235-36 (3d ed. 2004) ("The pleading must contain something
21  more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
22  cognizable right of action")).

23  Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion
24  of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see
25  how a claimant could satisfy the requirements of providing not only 'fair notice' of the
26  nature of the claim, but also 'grounds' on which the claim rests."

27  _____

28  [3] Unless otherwise noted, all further references to "Rule" or "Rules" are to the Federal Rules of
Civil Procedure.

1   <u>Twombly</u>, 550 U.S. at 555 n.3 (internal citations omitted).  A pleading must contain "only

2   enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570; <u>see</u> <u>also</u>

3   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-679 (2009).  If the "plaintiffs . . . have not nudged

4   their claims across the line from conceivable to plausible, their complaint must be

5   dismissed."  <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 680.

6          Under Rule 9(b), however, a party alleging fraud or intentional misrepresentation

7   must satisfy a heightened pleading standard by stating with particularity the

8   circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Specifically, "[a]verments of fraud

9   must be accompanied by 'the who, what, when, where, and how' of the misconduct

10  charged."  <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir.2003) (quoting

11  <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir.1997)).  Further, "a plaintiff must set forth

12  more than the neutral facts necessary to identify the transaction.  The plaintiff must set

13  forth what is false or misleading about a statement, and why it is false."  <u>Id.</u> (quoting

14  <u>Decker v. GlenFed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir.1994)).

15         A court granting a motion to dismiss a complaint must then decide whether to

16  grant leave to amend.  Rule 15(a) empowers the court to freely grant leave to amend

17  when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . .

18  undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the

19  amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  However, leave to

20  amend is generally denied when it is clear the deficiencies of the complaint cannot be

21  cured by amendment.  <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir.

22  1992); <u>Balistieri v. Pacifica Police Dept.</u>, 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint

23  should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the

24  plaintiff can prove no set of facts in support of his claim which would entitle him to

25  relief.")  (internal citations omitted).

26  ///

27  ///

28  ///

6

1
**ANALYSIS**

2

3       In their motion, Defendants argue that each of Plaintiffs' causes of action should

4   be dismissed for failure to state a claim under Rule 12(b)(6).

5

6       **A.      Breach of Fiduciary Duty**

7       According to Defendants, Plaintiffs' breach of fiduciary duty claim fails because

8   the Complaint does not reference any documents and does not refer to any enforceable

9   contract that would have created a fiduciary relationship between the parties.[4]  (ECF

10  No. 20 at 6.)

11      Under California law, "fiduciary or confidential relationship may arise whenever

12  confidence is reposed by persons in the integrity and good faith of another.  If the latter

13  voluntarily accepts or assumes that confidence, he or she may not act so as to take

14  advantage of the others' interest without their knowledge or consent."  City of

15  Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483

16  (1998).  By statute, a fiduciary relationship exists among partners in a business

17  partnership.  Cal. Corp. Code § 16404.  A partnership is defined as "an association of

18  two or more persons to carry on as co-owners a business for profit," id. § 16202(a), and

19  it is well-settled that the existence of a partnership is a question of fact.  Filippo Indus.,

20  Inc. v. Sun Ins. Co. of New York, 74 Cal. App. 4th 1429, 1444 (1999).  No particular

21  formalities are required to create a partnership, and whether a partnership has been

22  created may be inferred from the parties' conduct.

23  ///

24      ───────────────────────

25      [4] In their motion to dismiss, Defendants ask the Court to take judicial notice of the ruling issued by the Superior Court of California for the County of Sacramento in US Bancorp Equipment Finance v. Sacramento EDM, Case No. 04AS03050, in which the state court allegedly declined to find that an enforceable contract existed between the parties.  (ECF No. 20 at 2.)  Pursuant to Rule 201 of the Federal Rules of Evidence, this Court may take judicial notice of another court's order for the limited purpose of recognizing the judicial act that the order represents, but not for the truth of the facts found or alleged therein.  Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).  Here, Defendants seek judicial notice of the facts as determined by the state court, which is not a proper subject of judicial notice.  Accordingly, Defendants' request for judicial notice is denied.

28

1   See Weiner v. Fleischman, 54 Cal.3d 476, 482–83 (1991) ("A joint venture or

2   partnership may be formed orally or assumed to have been organized from a reasonable

3   deduction from the acts and declarations of the parties.") (internal citations and quotation

4   marks omitted); Bank of Cal. v. Connolly, 36 Cal. App.3d 350, 364 (1973) ("Whether a

5   partnership . . . exists is primarily a factual question to be determined by the trier of fact

6   from the evidence and inferences to be drawn therefrom").  Whether or not the parties

7   have entered into a partnership relationship generally depends on whether they intended

8   to share in the profits, losses and the management and control of the enterprise.  See,

9   e.g., Nelson v. Abraham, 29 Cal.2d 745, 750 (1947) (profit sharing is a factor in

10  determining whether a partnership exists); Billups v. Tiernan, 11 Cal. App. 3d 372, 379

11  (1970) (some degree of participation in management and control of business is an

12  element of partnership).

13          Here, Plaintiffs have alleged that the parties agreed to conduct SAC EDM's

14  business together and to share SAC EDM's profits, that Defendants agreed to provide

15  operating capital for SAC EDM's operations, and that Defendants assumed some of the

16  control over the business enterprise.  (Compl. ¶¶ 17-18.)  These facts are sufficient to

17  plead the existence of a partnership between the parties.  See Connolly, 36 Cal. App. 3d

18  at 364; Nelson, 29 Cal.2d at 750.  Given that California law does not require a

19  partnership agreement to be in writing or to comply with any other particular formalities,

20  Defendants' argument that Plaintiffs must provide a formal contract demonstrating the

21  existence of a partnership lacks merit.  Since a statute imposes fiduciary duties on

22  partners in a business partnership, see Cal. Corp. Code § 16404, by pleading that a

23  partnership existed, Plaintiffs have sufficiently alleged that Defendants owed a fiduciary

24  duty to Plaintiffs and breached that duty by engaging in numerous acts of self-dealing.

25  Accordingly, Defendants' motion to dismiss with respect to Plaintiff's first cause of action

26  will be denied.

27  ///

28  ///

1

2

**B.      Fraud and Constructive Fraud**

3      Defendants argue that Plaintiffs' claims for fraud and constructive fraud should be

4   dismissed as insufficiently pled under Rule 9(b).  (ECF No. 20 at 7.)

5

6      **1.      Fraud**

7

8      Common law elements of fraud which give rise to the tort action for deceit under

9   California law are: (1) misrepresentation of a material fact (consisting of false

10  representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to

11  deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and

12  (5) resulting damage.  City of Atascadero, 68 Cal. App. 4th at 481.  Here, while the

13  Complaint contains several examples of allegedly fraudulent acts committed by

14  Defendants, Plaintiffs do not allege that Defendants acted with intent to deceive

15  Plaintiffs.  Plaintiffs' fraud claim fails in the absence of a showing that any Defendant had

16  the required scienter, i.e., an actual intent to defraud Plaintiffs.

17      Additionally, Plaintiffs' fraud claim does not meet the specificity requirement under

18  Rule 9(b).  The Ninth Circuit explained that allegations of fraud must be "specific enough

19  to give defendants notice of the particular misconduct which is alleged to constitute the

20  fraud charged so that they can defend against the charge and not just deny that they

21  have done anything wrong."  Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993).  A

22  pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud

23  so that the defendant can prepare an adequate answer from the allegations."  Id. at

24  671-72.  To state a viable fraud claim, "[t]he complaint must specify such facts as the

25  times, dates, places, benefits received, and other details of the alleged fraudulent

26  activity."  Id. at 672.

27  ///

28  ///

1    Plaintiffs' Complaint, by lumping all Defendants together, fails to provide

2    Defendants with sufficient notice as to the role of each Defendant in the alleged

3    fraudulent scheme.  See Swartz v. KPMG, LLP, 476 F.3d 756, 765 (9th Cir. 2007); see

4    also Castaneda v. Saxon Mortgage Servs., Inc., No. CIV. 2:09-01124 WBS DAD, 2009

5    WL 4640673, at *6 (E.D. Cal. Dec. 3, 2009) ("Where multiple defendants are asked to

6    respond to allegations of fraud, the complaint must inform each defendant of his alleged

7    participation in the fraud.").  The Complaint also fails to set forth when the alleged

8    fraudulent acts took place or when Plaintiffs became aware of the purported fraud.

9    Given that the statute of limitations on fraud claims under California law is three years

10   from the date of discovery of the facts constituting the fraud, see Cal. Civ. Proc. Code

11   § 338(d), it is critical that Plaintiffs provide Defendants with adequate notice as to the

12   dates of the alleged fraudulent conduct.

13   For their part, Plaintiffs point out that the heightened pleading standard may be

14   relaxed where, "as in cases of corporate fraud, the plaintiff cannot be expected to have

15   personal knowledge of the facts constituting the wrongdoing."  (ECF No. 24 at 9.)  While

16   it is true that Rule 9(b)'s specificity requirement may be relaxed as to matters within the

17   opposite party's exclusive knowledge, see Moore v. Kayport Package Exp., Inc.,

18   885 F.2d 531, 540 (9th Cir. 1989), neither the Complaint nor Plaintiff's opposition to

19   Defendants' instant motion demonstrates that the evidence of the alleged fraud is

20   exclusively within Defendants' possession or that Plaintiffs have no knowledge of the

21   relevant facts.  Accordingly, Plaintiffs' fraud claim does not comply with Rule 9(b)'s

22   heightened pleading requirements and must be dismissed.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

10

1

    **2.      Constructive Fraud**

2

3      To state a claim for constructive fraud under California law, a plaintiff must allege:

4  (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving

5  a breach of that duty; (3) reliance; and (4) resulting damage.  Cal. Civ. Code § 1573;

6  Dealertrack, Inc. v. Huber, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006).  Thus, a

7  plaintiff need not establish fraudulent intent to assert a viable constructive fraud claim as

8  long as the parties are in a fiduciary or confidential relationship.  Sandy v. McClure,

9  676 F. Supp. 2d 866, 882 (N.D. Cal. 2009).

10      That being said, Plaintiffs' constructive fraud claim is still subject to the

11 particularity requirement under Rule 9(b).  See Lugo v. Bank of Am., N.A., No. 2:11-CV-

12 01956-MCE, 2012 WL 893878, at *5 (E.D. Cal. Mar. 15, 2012); Qwest Commc'n v.

13 Herakles, LLC, No. 2:07-cv-00393-MCE-KJM, 2008 WL 3864620, at *3 (E.D. Cal.

14 Aug. 19, 2008).  Because the Complaint's factual allegations offered in support of

15 Plaintiffs' constructive fraud claim are almost identical to the allegations in support of the

16 fraud claim, the Court's reasoning above requires dismissal of Plaintiffs' constructive

17 fraud claim for failure to comply with Rule 9(b)'s pleading requirements.

18      Accordingly, the Court grants Defendants' Motion to Dismiss with respect to

19 Plaintiffs' fraud and constructive fraud claims and dismisses those claims with leave to

20 amend.

21

22      **C.      Intentional and Negligent Interference with Prospective Business
                  Advantage and Tortious Interference with Contract**

23

24      In their motion to dismiss, Defendants argue that Plaintiffs' claims for intentional

25 and negligent Interference with prospective business advantage and tortious

26 interference with contract fail because California law does not recognize a tort cause of

27 action for a breach of contract claim.  (ECF No. 20 at  7-9.)

28 ///

1    To make a prima facie case of intentional interference with prospective business

2    (or economic) advantage, a plaintiff must demonstrate:

3         (1) an economic relationship between the plaintiff and some
          third party, with the probability of future economic benefit to
4         the plaintiff; (2) the defendant's knowledge of the relationship;
          (3) intentional acts on the part of the defendant designed to
5         disrupt the relationship; (4) actual disruption of the
          relationship; and (5) economic harm to the plaintiff
6         proximately caused by the acts of the defendant.

7    Youst v. Longo, 43 Cal.3d 64, 71 n.6 (1987).  The tort of negligent interference with a

8    prospective business advantage differs in that the defendant's conduct does not need to

9    be intentional.  Venhaus v. Shultz, 155 Cal. App. 4th 1072, 1078 (2007).  To state a

10   claim for tortious interference with contract, a plaintiff must demonstrate not simply an

11   economic relationship with third parties, but the existence of an enforceable contract.

12   Reeves v. Hanlon, 33 Cal.4th 1140, 1148 (2004).  However, "the plaintiff need not prove

13   that a defendant acted with the primary purpose of disrupting the contract, but must

14   show the defendant's knowledge that the interference was certain or substantially certain

15   to occur as a result of his or her action."  Id.

16        Defendants rely heavily on JRS Products, Inc. v. Matsushita Electric Corp. of Am.,

17   115 Cal. App. 4th 168 (2004), in arguing that tort damages, including damages for

18   interference with prospective economic advantage and interference with contract, are

19   not allowed for breach of contract claims.  (ECF No. 20 at 3, 8.)  In JRS Products, the

20   court held that a plaintiff cannot recover on a claim for tortious interference with

21   prospective economic advantage against its contractual party where the alleged

22   wrongdoing is the very same activity that gave rise to the plaintiff's breach of contract

23   claim.  115 Cal. App. 4th at 179-183.  The court explained that "the essential nature of

24   the conduct determines whether the action sounds in contract or in tort."  Id. at 182.  In

25   JRS Products, the alleged wrongful conduct was the termination of the franchise

26   agreement by the franchisor without cause, which was "essentially a breach of contract".

27   Id. at 183.

28   ///

1   The court did not allow the plaintiff's tort action to proceed reasoning that "a breach of

2   contract claim cannot be transmuted into tort liability by claiming that the breach

3   interfered with the promisee's business." Id.

4          Here, unlike in JRS Products, Plaintiffs have not brought any breach of contract

5   claims against Defendants.  Further, the wrongful conduct alleged in the Complaint with

6   respect to the three interference claims is separate and distinct from any potential

7   breach of contract claim that Plaintiffs could have brought against Defendants.  In

8   particular, Plaintiffs allege that SAC EDM had an existing enforceable contract with U.S.

9   Bancorp, and that Defendants convinced SAC EDM to breach that contract by promising

10  to buy any resulting judgment from U.S. Bancorp and sell it to SAC EDM at a reduced

11  cost.  (Compl. ¶¶ 19-20, 84-89.)  Thus, the interference with contract claim does not

12  arise out of the contractual relationship between the parties to this lawsuit, but rather out

13  of Plaintiffs' contract with a third party (U.S. Bancorp) and Defendants' allegedly tortious

14  acts aimed at inducing Plaintiffs to breach that contract.  In addition to alleging that an

15  enforceable contract existed between SAC EDM and U.S. Bancorp, Plaintiffs also

16  alleged in the Complaint that Defendants knew of that contract, that Defendants' conduct

17  resulted in a breach of that contract by SAC EDM, and that Plaintiffs suffered damages

18  as a result.  (Id.)  Thus, Plaintiffs have sufficiently pled the elements of the tort of tortious

19  interference with contract under California law.

20         As to Plaintiffs' claims for intentional and negligent interference with prospective

21  economic advantage, the Complaint alleges that Plaintiffs had an ongoing economic

22  relationship with SAC EDM's customers, and that Defendants interfered with that

23  relationship by depriving SAC EDM of the capital necessary to obtain and fulfill the

24  customer's orders.  (Compl. ¶¶ 67-73, 77-81.)  Because Defendants' wrongful acts, as

25  alleged, amount to conduct that is independently tortious, Plaintiffs claims for

26  interference with prospective economic advantage are distinct from any breach of

27  contract claim that Plaintiffs could have asserted against Defendants.

28  ///

1    See LiMandri v. Judkins, 52 Cal. App. 4th 326, 340-341 (1997); Crescent Wood Working

2    Co., Ltd. v. Accent Furniture, Inc., No. EDCV 04–1318 RT (PJWx), 2005 WL 5918848, at

3    *6 (C.D. Cal. Aug. 10, 2005).

4            Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims for intentional and

5    negligent interference with prospective business advantage and tortious interference

6    with contract is denied.

7

8            **D.    Unjust Enrichment**[5]

9            With respect to Plaintiffs' unjust enrichment claim, Defendants recycle their earlier

10   argument that Plaintiffs' failure to allege the existence of a contract is fatal to the unjust

11   enrichment claim.  (ECF No. 20 at 9.)  There is no requirement under California law for

12   an unjust enrichment claim to be predicated on the existence of an enforceable

13   contract.[6]  In order to establish a claim for unjust enrichment, a plaintiff must plead

14   "receipt of a benefit and unjust retention of the benefit at the expense of another."

15   Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000).  Here, Plaintiffs have

16   sufficiently alleged that Defendants unjustly benefitted at SAC EDM's expense.  Thus,

17   Plaintiffs' unjust enrichment claim may proceed.

18   ///

19

---

20   [5] Some courts have held that a plaintiff cannot assert a stand-alone claim for unjust enrichment under California law.  See Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment.  Unjust enrichment is synonymous with restitution.")

21   (citations omitted); Block v. eBay, Inc., No. C 11–06718 CRB, 2012 WL 1601471, at *6 (N.D. Cal. May 7, 2012) (concluding that unjust enrichment is not a cause of action but a remedy; but see Peterson v.

22   Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008) (recognizing a cause of action for unjust enrichment under California law).  However, in their Motion to Dismiss, Defendants do not argue that Plaintiffs cannot

23   assert a stand-alone claim for unjust enrichment.  Although Plaintiffs have raised this issue in their reply memorandum, (see ECF No. 25 at 9), the Court declines to consider any arguments raised for the first

24   time in Defendants' reply brief since Plaintiffs have not had an opportunity to respond to those arguments. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments

25   raised for the first time in a reply brief.").

26   [6] In fact, unjust enrichment, as an action in quasi-contract, generally "does not lie when an enforceable, binding agreement exists defining the rights of the parties."  Paracor Fin., Inc. v. Gen. Elec.

27   Capital Corp., 96 F.3d 1151, 1167 (9th Cir.1996); see also Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties

28   have an enforceable agreement regarding a particular subject matter.").

1

**E.   Unfair Business Practices in Violation of California Business and Professions Code**

2

3         Plaintiffs' eighth cause of action arises under California's Business and

4   Professions Code § 17200, known as the Unfair Competition Law ("UCL").  Defendants

5   argue that Plaintiffs' UCL claim fails because the Complaint does not allege facts

6   identifying how Defendants violated the UCL.  (ECF No. 20 at 9.)

7         The UCL was enacted "to protect both consumers and competitors by promoting

8   fair competition in commercial markets for goods and services."  Kasky v. Nike, Inc.,

9   27 Cal. 4th 939, 949 (2002).  The statute establishes three varieties of unfair

10  competition: "unlawful, unfair, or fraudulent" business acts and practices.  Cal. Bus. &

11  Prof. Code § 17200.  "[T]he central issue presented under [the UCL] is whether the

12  public at large, or consumers generally, are affected by the alleged . . . business practice

13  of defendants."  In re Webkinz Antitrust Litig., 695 F. Supp. 2d 987, 998-99 (N.D. Cal.

14  2010).  Thus, a UCL claim fails if it lacks any connection to the protection of fair

15  competition or the general public.  Id. at 999; see also Dillon v. NBCUniversal Media

16  LLC, No. CV 12–09728 SJO (AJWx), 2013 WL 3581938, at *7 (C.D. Cal. June 18, 2013)

17  ("[D]ismissal of UCL actions is appropriate when the plaintiff is neither a competitor nor a

18  consumer."); Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 135

19  (2007) (a claim alleging violations of the UCL is subject to dismissal if "the alleged

20  victims are neither competitors nor powerless, unwary consumers").

21        Here, Plaintiffs' UCL claim arises out of their business relationship with

22  Defendants and does not appear to involve the public in general or individual consumers

23  who were harmed by Defendants' alleged practices.  The Complaint is also devoid of

24  any allegations that Defendants are Plaintiffs' competitors or that Defendants' alleged

25  practices had a negative effect on competition.  The only injury alleged in Plaintiffs'

26  eighth cause of action is the harm to Folk's and SAC EDM's "financial privacy" and

27  monetary damages that Plaintiffs have suffered.  (Compl. ¶¶ 120-121.)

28

1   Nothing in the Complaint suggests that individual consumers or the public at large were

2   harmed as a result of Defendants' wrongdoing.  Because the Complaint, as pled, fails "to

3   establish the requisite public or individual consumer interest as required under California

4   law," it fails to state a viable UCL claim.  See In re Webkinz Antitrust Litig., 695 F. Supp.

5   at 998-99; see also Linear Tech. Corp., 152 Cal. App. 4th at 135 ("[W]here a UCL action

6   is based on contracts not involving either the public in general or individual consumers

7   who are parties to the contracts, a corporate plaintiff may not rely on the UCL for the

8   relief it seeks."); Dollar Tree Stores Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058,

9   1083 (N.D. Cal. 2012) (concluding that commercial parties may not use the UCL to

10  resolve a dispute over their economic relationship where "the case does not involve the

11  general public or individual consumers who are parties to a contract").

12      Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' UCL claim.

13  Since Plaintiffs have not demonstrated any bad faith or other malicious conduct, they will

14  be afforded leave to amend with respect to this claim.

15

16      **F.    Declaratory Relief**

17

18      In their Motion to Dismiss, Defendants argue that Plaintiffs' declaratory relief claim

19  fails because the other causes of action asserted in the Complaint are not viable.  (ECF

20  No. 20 at 10.)  Since, as demonstrated above, Plaintiffs have asserted cognizable claims

21  for breach of fiduciary duty and interference with contract and prospective business

22  advantage, Defendants instant argument lacks merit.

23      Defendants further argue that Plaintiffs' declaratory relief claim fails as a matter of

24  law because no actual controversy exists between the parties and because "there is no

25  immediacy presented in this litigation."  (ECF No. 20 at 10.)  Declaratory relief is

26  appropriate where the judgment will "serve a useful purpose in clarifying and settling the

27  legal relations in issue, and . . . will terminate and afford relief from the uncertainty,

28  insecurity, and controversy giving rise to the proceeding."

1   Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir.1986) (citation omitted).  Plaintiffs have

2   asserted in their Complaint that, inter alia, (1) Defendants are wrongfully attempting to

3   collect on the judgment, which was issued against SAC EDM as a result of U.S.

4   Bancorp's breach of contract claim against SAC EDM; (2) an actual controversy exists

5   relating to the parties' rights and duties with respect to that judgment; and (3) a judicial

6   declaration is necessary to determine Defendants' rights and duties as potential

7   judgment creditors and their authority to enforce U.S. Bancorp's judgment against

8   Plaintiffs.  (Compl. ¶¶ 125-129.)  These allegations are sufficient to state a plausible

9   claim for declaratory relief.

10          Finally, Plaintiffs contend that the claim for declaratory relief should be dismissed

11   because "[t]he Complaint provides no detail why complaints about judgment

12   enforcement are not barred by litigation privilege."  (ECF No. 20 at 11.)  It appears that

13   Plaintiffs refer to the litigation privilege recognized in California Civil Code § 47(b)[7],

14   which "derives from common law principles establishing a defense to the tort of

15   defamation."  See Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006).  The purpose of the

16   privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear

17   of being harassed subsequently by derivative tort actions."  Silberg v. Anderson,

18   50 Cal.3d 205, 213 (1990).  The privilege bars all tort causes of action other than

19   malicious prosecution and applies to any communication "(1) made in judicial or quasi-

20   judicial proceedings; (2) by litigants or other participants authorized by law; (3) to

21   achieve the objects of the litigation; and (4) that have some connection or logical relation

22   to the action."  Id. at 212.

23   ///

24   ///

25   ///

26   ///

27          [7] California Civil Code § 47(b) provides that "a privileged publication or broadcast is one made . . .
in any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by
28   law, or (4) in the initiation or course of any other proceeding authorized by law . . ."

1    The California Supreme Court explained:

2           Although originally enacted with reference to defamation . . . ,
            the privilege is now held applicable to any communication,
3           whether or not it amounts to a publication . . .   Further, it
            applies to any publication required or permitted by law in the
4           course of a judicial proceeding to achieve the objects of the
            litigation, even though the publication is made outside the
5           courtroom and no function of the court or its officers is
            involved.
6

7    Rusheen, 37 Cal.4th at 1057.  Additionally, "if the gravamen of the action is

8    communicative, the litigation privilege extends to noncommunicative acts that are

9    necessarily related to the communicative conduct," including "acts necessary to enforce

10   the judgment."  Id. at 1065.  Under this test, the key inquiry is "whether the injury

11   allegedly resulted from an act that was communicative in its essential nature."  Id. at

12   1058.

13          Although Defendants generally suggest that the litigation privilege might apply in

14   the instant case, they have not provided any explanation as to what "communicative"

15   conduct by Plaintiffs or "noncommunicative acts that are necessarily related to the

16   communicative conduct" lead to the application of the privilege.  See id. at 1065.

17   According to the Complaint, Defendants' declaratory relief claim arises exclusively out of

18   Plaintiffs' alleged self-dealing and other noncommunicative conduct that led to the

19   issuance of the $280,000 judgment against Plaintiffs.  Nothing in the Complaint suggests

20   that Defendants' alleged wrongdoing was done in furtherance of Defendants' litigation

21   goals.  Since the gravamen of the Complaint is Defendants' "independent,

22   noncommunicative, wrongful" conduct, the litigation privilege does not apply.  See id.

23          Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' declaratory

24   relief claim.

25   ///

26   ///

27   ///

28   ///

18

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 19) is GRANTED IN PART and DENIED IN PART as follows:

1.      Defendants' Motion to Dismiss is GRANTED, with leave to amend, with respect to Plaintiffs' claims for fraud (second cause of action), constructive fraud (third cause of action), and Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 (eighth cause of action).

2.      Defendants' Motion to Dismiss is DENIED in all other respects.

3.      Plaintiffs are directed to file an amended complaint with respect to those causes of actions dismissed, should they choose to do so, within twenty (20) days from the date this Order is filed electronically.  If no amended pleading is filed within said twenty (20) days, the causes of action dismissed by virtue of this Order will be dismissed with prejudice without further notice to the parties.

IT IS SO ORDERED.

Dated:  August 14, 2013

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT