UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO E.D.M., INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>HYNES AVIATION INDUSTRIES, et al.,<br><br>                    Defendants. | No. 2:13-cv-0288-KJN<br><br><br>ORDER |

The presentation of evidence in the bench trial in this action concluded on November 14, 2016.  At the close of trial, the undersigned instructed counsel for the parties that they will each prepare proposed findings of fact and conclusions of law for the undersigned's consideration consistent with this order.

First, for each of the parties' claims or counterclaims, the party asserting the claim shall provide a detailed legal and factual analysis, with each legal assertion supported by appropriate authority and each fact supported by citations to the evidence presented at trial.[1]  The analysis

---

[1] The court will look with disfavor on any inferences the parties attempt to draw that are not tied to the applicable law or the evidence presented at trial.  The parties are not permitted to provide any supplemental documentation or declarations.  Similarly, the court will disregard any assertions of fact that rely on purported evidence not properly presented at trial - i.e. every factual statement must be supported by a citation to the record, and any citation to a document must include a citation to where the document was discussed in the record and admitted into evidence.

1  must explain why the evidence presented at trial demonstrates that the party has met its burden

2  with regard to that claim.[2]  Each party shall also provide a detailed, claim-by-claim analysis with

3  regard to the relief to which that party asserts that it is entitled provided that the party prevails on

4  each claim.  Such analysis shall, if possible, include an exact dollar figure for any damages and a

5  breakdown of how that figure was arrived at that is supported by evidence presented at trial.

6       Second, each party shall provide a detailed legal analysis supported by applicable law and

7  evidence presented at trial explaining why the opposing parties have not proven their claims or

8  counterclaims.  The parties shall <u>not</u> assume that just because they believe they have provided an

9  analysis on a particular claim that, if meritorious, would preclude an opposing party from

10  succeeding on some or all of their own claims or counterclaims, that the analysis can consist

11  merely of a statement that the opposing party's claims or counterclaims fail as a result of the

12  meritorious claims.  Instead, the court directs the parties to initially address each claim or

13  counterclaim on the merits as if it is unaffected by the outcome of the other claims or

14  counterclaims, and then provide an analysis as to whether and to what degree the outcome of the

15  other claims or counterclaims impact the analysis for that claim.[3]

16  ////

17  ////

18  ////

19

20  [2] This means that plaintiffs must provide a separate detailed analysis with regard to both
    Sacramento E.D.M., Inc. and Dan Folk individually for each claim.  For example, plaintiffs
21  should provide an analysis that shows why the evidence presented at trial and the relevant law
    demonstrates that Michael Hynes breached his fiduciary duty owed separately to Sacramento
22  E.D.M., Inc. and Dan Folk.  Similarly, defendants must separate out which defendant asserting
    counter claims for breach of contract, i.e., Hynes Aviation Industries, Inc. or Michael Hynes, was
23  party to each of the contracts that evidence shows Sacramento E.D.M., Inc., Dan Folk, or both,
24  breached.

25  [3] Furthermore, the court wants counsel for the parties to undertake an honest assessment of the
    viability of their claims and counterclaims in light of the evidence presented at trial.  If, upon
26  review of the trial transcript and the evidence presented at trial, counsel for a party reaches the
    conclusion that the evidence presented fails to establish any of the necessary elements for one or
27  more of his clients' claims, he shall inform the court of that conclusion and request dismissal of
28  such claims.

Third, the parties shall, to the extent possible, provide answers to all of the following questions with complete legal and factual citations:

- Are plaintiffs claiming that Michael Hynes owed a fiduciary duty to both Sacramento E.D.M., Inc. and Dan Folk, or just Sacramento E.D.M., Inc.?  If they are claiming that a fiduciary duty was owed to Dan Folk, on what basis?  As a partner in OK EDM? As Sacramento E.D.M., Inc.'s President?  Only with regard to any dealings with Michael Hynes regarding Dan Folk's personal life?

- When was any such fiduciary relationship created?  What was the consideration for any such fiduciary relationship?

- On which occasion(s) did Michael Hynes breach a fiduciary obligation? To whom?

- What evidence presented at trial shows the damages Sacramento E.D.M., Inc. and/or Dan Folk suffered as a result of each of Michael Hynes' breaches of fiduciary duty?

- Assuming the court finds Michael Hynes breached his fiduciary duty to one or both plaintiffs, how does that breach affect the parties' other claims and remedies?  (e.g., does it permit plaintiffs to rescind contracts that were entered into as a result of Michael Hynes' breach?)

- Can plaintiffs rescind contracts and obligations even though Dan Folk repeatedly reaffirmed his and Sacramento E.D.M., Inc.'s indebtedness to defendants?

- Did the Folks (both Dan and Geraldine) have an obligation to provide all of their records – personal and business – regarding assets and liabilities, lease agreements, tax returns, etc. so that Michael Hynes could accurately advise them and Sacramento E.D.M., Inc.?

- Did Michael Hynes have an obligation to make sure that he had seen all of the records (e.g., accounting records, tax returns, property leases, equipment leases, etc.) before advising plaintiffs?

- How should the court distinguish among the various entities and individuals, especially because the evidence indicates that the parties often failed to do so (e.g., Sacramento E.D.M., Inc., Dan Folk individually vs. as President, Dan Folk sole proprietorship, etc.);

(Michael Hynes, OK EDM, Hynes Aviation Industries, Inc., Hynes Children TF Limited, etc.)?

- How does the court distinguish among the entities since many of their records – e.g., corporate formation documents, corporate minutes, dissolution documents, transfer of assets, bank accounts – were not introduced into evidence at trial?

- From what evidence can the court determine that there was a benefit to Sacramento E.D.M., Inc. with the formation of OK EDM?  What about with regard to Dan Folk personally?  Conversely, from what evidence can the court determine there was not a benefit to Sacramento E.D.M., Inc. or Dan Folk personally with the formation of OK EDM?

- What effect, if any, does the choice of law provision in the equipment lease agreements between the parties have on the outcome of the parties' claims based on those agreements?  (I.e., is Missouri law substantively different than California law regarding the elements for any of the parties' claims based on those agreements?)  What about with regard to damages for any of the claims based on those agreements?

- What effect does the fact that defendant Hynes Children TF Limited is not named as a counter-claimant have on defendants' standing to assert their breach of contract claims based on Sacramento E.D.M., Inc.'s nonpayment of the US Bancorp judgment in light of the evidence presented indicating Hynes Aviation Industries, Inc. assigned that judgment to Hynes Children TF Limited?

- Similarly, how does the evidence showing that Hynes Children TF Limited was named as the lessor for at least some of the equipment leases affect Michael Hynes's and Hynes Aviation Industries, Inc.'s counterclaims seeking to recover for breach of contract against Sacramento E.D.M., Inc. for its non-payment under those leases?

- What evidence was presented at trial showing the assignment/reassignment of payment rights among defendants regarding the US Bancorp judgment and/or the equipment leases?

4

o  More specifically, is there any evidence that shows that Hynes Children TF Limited assigned/reassigned its rights to Sacramento E.D.M., Inc.'s payments on the US Bancorp judgment and/or under the equipment leases prior to Sacramento E.D.M., Inc.'s initial refusal to make payments?  Was evidence presented that Hynes Children assigned/reassigned its rights to Sacramento E.D.M., Inc.'s payments sometime after Sacramento E.D.M., Inc.'s initial refusal to pay?

- With regard to plaintiffs' fraud and constructive fraud claims, what evidence presented at trial shows specific instances where Michael Hynes failed to fully disclose or concealed material facts regarding the parties' agreements and other business dealings?

    o  Assuming the court finds Michael Hynes liable for fraud, what evidence presented at trial shows the actual damages plaintiffs suffered as a result of each specific instance of fraud?  Were those damages specific to Sacramento E.D.M., Inc., Dan Folk personally, or both?

    o  What other remedies beyond damages would plaintiffs be entitled to assuming the court finds Michael Hynes liable for fraud?  (e.g., rescission of any contracts entered into based on the fraudulent conduct, disgorgement of any unjustly retained profits.)

    o  What, if any, benefits did Sacramento E.D.M., Inc. and/or Dan Folk enjoy as a result of any deals the parties entered into based on Michael Hynes' fraud, assuming the court finds such conduct occurred?  How are those benefits to be considered in determining a proper remedy?  For example, should any loan monies retained from a loan agreement entered into based on Michael Hynes' failure to disclose or concealment of material facts offset any actual damages?  Should such funds be disgorged as unjust enrichment separate from any damages?  Or, assuming defendants prevail on their breach of contract claim related to that loan agreement, should that money be paid as damages to defendants?

////

- Assuming the court finds the accounting and other financial records drafted by Michael Hynes regarding what plaintiffs still owe on OK EDM's, Michael Hynes's, and Hynes Aviation Industries, Inc.'s loans to Sacramento E.D.M., Inc., the US Bancorp judgment, and/or payments under the leases to be unreliable evidence, what other evidence presented at trial can the court rely on to determine the outstanding balance owed for those loans and/or the judgment?

- What reliable records have been admitted conclusively establishing the amount of Sacramento E.D.M., Inc.'s overhead, loan payments, and entitlement to profits on a month-to-month, year-to-year, or other periodic basis?

- Is there any credible evidence that was presented at trial that shows the total amount Sacramento E.D.M., Inc. and Dan Folk paid towards the loans, lease payments, US Bancorp judgment, and insurance premiums at issue?
  - Is there any evidence regarding what percentage of those payments went towards interest versus principal?

- Did Sacramento E.D.M., Inc. bill to OK EDM as part of its overhead the management fees it paid to Dan Folk or Michael Hynes?

- Assuming plaintiffs are able to rescind the loan agreements, are they estopped from recovering any payments the evidence shows they made on those loans?

- How is the court to interpret the terms of the parties' equipment leases given that certain terms of those agreements appear to be in conflict?  (e.g., terms regarding whether the agreement can be terminated and how the termination process is to occur.)

- How many separate loans does the evidence show are still outstanding?  What are the amounts purportedly still due with regard to each loan?  Which of those loans, if any, are memorialized in writing?  Of the loans not written down, what evidence proves their existence and their terms?

- Does the evidence show that any of the loans made to Sacramento E.D.M., Inc. not memorialized in writing and signed by Dan Folk and/or Geraldine Folk are unenforceable under the applicable statute of frauds?

6

- What was the breakdown of the money changing hands between the parties – i.e., what amounts were loaned, paid back as interest and principal on those loans, profits made by Sacramento E.D.M., Inc. that were transferred to OK EDM or other defendants, made as lease payments, made as insurance payments, made on the US Bancorp judgment, etc.?

- Of the money paid by plaintiffs to defendants and/or OK EDM, was it paid by Sacramento E.D.M., Inc. or Dan Folk?  What is the breakdown of who paid what to whom?

- Were any of the individual loans made by any of the defendants to either plaintiff over $100,000?  Were the agreements for those loans memorialized in a signed writing?  Does the applicable statute of frauds require such an agreement to be in writing?

  o If the initial loan was over $100,000, or ballooned above that amount due to interest at some point, but was paid down to the point that the outstanding amount is less than $100,000, does the applicable statute of frauds still come into play?

- If Sacramento E.D.M., Inc. had defaulted or was on the verge of default (i.e., months behind on payments) regarding the US Bancorp leases before Michael Hynes made any suggestion to stop making payments on those leases, how could his actions have interfered with any prospective business advantage Sacramento E.D.M., Inc. may have had with regard to its relationship with US Bancorp?

  o What about with regard to plaintiffs' claim in their operative complaint that Michael Hynes's actions "substantially limited Sacramento E.D.M., Inc.'s ability to secure . . . lines of credit?"

- Similarly, how could Michael Hynes's actions have constituted tortious interference with Sacramento E.D.M., Inc.'s lease contract with US Bancorp when Sacramento E.D.M., Inc. had defaulted or was on the verge of defaulting on that agreement?

- During which time was each of the parties' business plans operative? (i.e., revisions 1, 2, 3, etc.)

- What is the effect, if any, on the parties' claims that Dan Folk appears to have breached any obligation to Sacramento E.D.M., Inc. and made decisions for his personal benefit?

7

- What does the evidence offered at trial show regarding which of Sacramento E.D.M., Inc.'s monthly expenses (e.g., material costs, employee salaries, loan payments to defendants, lease payments to defendants) were being reimbursed by OK EDM?
  - Which expenses were excluded from what could be reimbursed by OK EDM? (e.g., payments on the US Bancorp judgment?)
- What evidence is there that Hynes Aviation Industries, Inc./Hynes Children TF Limited's purchase of and efforts to enforce the US Bancorp judgment constitute "intrastate business" for purposes of California Corporations Code §2105(a)?  Does that statute even apply to those actions under the circumstances presented by the evidence?
- Assuming defendants properly purchased the US Bancorp judgment and the court finds plaintiffs breached that agreement and failed to satisfy the judgment in full, do any of plaintiffs' claims still provide a basis for plaintiffs' requested injunction against defendants' enforcement of that judgment?
- Assuming the court finds that none of the parties have met their respective burdens of proof regarding any of their claims or counterclaims, where does that leave the parties regarding their business dispute from a legal perspective?
  - Are plaintiffs able to walk away from having to pay further with regard to any outstanding loan balances defendants claim are due?  Or, would plaintiffs have a continuing obligation to repay those amounts?  What payment obligations would still exist under such an outcome?
  - What would the current status of the parties' business obligations to one another, if any, look like?
  - Would the terms of any of the parties' most recent business plan still be in place and impose obligations on the parties?  Which documents constitute the most recent business plan, and how is that fact established?

////

////

////

8

1       The parties shall provide a detailed to answer to each of these questions that includes

2   citations to applicable law, the transcript, and evidence introduced at trial, where appropriate.

3   The parties shall answer these questions under a heading separate from their analysis of the

4   claims.  However, to the extent a party believes they have fully answered one or more of the

5   above questions in their legal/factual analysis, they shall answer those question(s) by citing to the

6   specific portion(s) of their analysis that provide those answer(s).  If a party believes a particular

7   question is irrelevant to the outcome of a particular claim or claims, or otherwise should not

8   factor into the court's analysis, that party shall state that position as its answer to the question and

9   provide legal and factual reasons in support of that position.  To the extent a party does not

10   answer a question, the court will presume that party is unable to provide an answer and will take

11   that fact into consideration in addressing any claims or issues related to that query.

12       Finally, each party shall prepare a proposed special verdict form specifying each claim, a

13   brief synopsis of all evidence proving how that party prevails on each of those claims, and all of

14   the calculations of the resulting damages with citations to the record proving those calculations.

15       Within 30 days from the date of this order, the parties shall each file their own separate

16   proposed findings of fact and conclusions of law fully responding to all of the areas of analysis

17   and questions set forth in this order, and a special verdict form containing all of the information

18   described above.  Within 30 days thereafter, each party may file a response to the opposing

19   parties' submission.

20       After the parties have made these submissions, the court will either inform them of

21   whether further briefing will be necessary, or file an order that sets forth its final conclusions of

22   law and fact and renders final judgment in this action.

23       IT IS SO ORDERED.

24   Dated:  November 15, 2016

25

26   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

27

28

9